UNITED STATES DISTRICT COURT

DISTRICT OF HAWWAII

JESUS CACHO,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL NO. CV07 0040 4 JMS LEK
RELATED TO CRIMINAL CASE NO.
1:05CR00164-002

**MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS
MOTION PURSUANT TO 28 U.S.C. § 2255**

Comes now the petitioner, Jesus Cacho, pro se, in the above entitled cause, and hereby submits the following memorandum of law in support of habeas corpus motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 per this Court's order extending petitioner's time in which to file his supporting memorandum on or before November 30, 2007.

**A     Ineffective Assistance of Counsel When His Counsel Failed
To File a Timely Notice of Appeal As Requested to Do So.**

Here, petitioner was denied effective assistance of counsel by counsel's failure to file a timely notice of appeal as specific requested to do so after sentencing, **United States v. Sandoval-Lopez**, 409 F.3d 1193, 1198 (9th Cir. 2005), petitioner's behavior gave counsel reason to think that he was interested in appealing. Such that counsel had an obligation to consult with petitioner regarding his appeal rights, counsel's expressing belief, through his assistant Lilia Felix, that there it have nothing to do with the appeal because "petitioner"



has been already sentenced in response to petitioner's asking counsel "to submit in an appeal on his behalf"[1] was not "consulting" with petitioner, nor did counsel make a reasonable effort to discover petitioner's wishes, and petitioner would likely have filed an appeal had he been objectively informed of his options. Id. at 1198.

In **Strickland v. Washington**, the United States Supreme Court recognized that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to "reasonably effective" legal assistance. 466 U.S. 668, 687 (1984). In so deciding, the Court announced the now familiar rule that, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate 1) that counsel's representation "fell below an objective standard of reasonableness"; and 2) that counsel's deficient performance resulted in prejudice to the defendant. Id. at 687.

In **Roe v. Flores-Ortega**, 528 U.S. 470 (2000), the Supreme Court recognized the application of the **Strickland** test to claims arising from an attorney's failure to appeal on behalf of a defendant and formulated a specific inquiry to be applied in such cases. Id. at 477. With regard to the first prong of the **Strickland** test, the Court began its analysis by noting the well-settled rule that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Id. (citing **Rodriguez v. United States**, 395 U.S. 327 (1969); **Peguero v. United States**, 526 U.S. 23 (1999)). More importantly, the Court went on to address what would appear to

---

[1] On August 7, 2006, this Court sentenced petitioner to a term of imprisonment of 108 months, four years' supervised release and a fine of $ 15,000 to be paid after petitioner's release. Thereafter, petitioner contacted his wife over the phone to instruct her to contact his attorney to file a notice of appeal on his behalf as he believes that there is a claim to be raised on appeal regarding the improper venue in Hawaii. She contacted counsel's office and spoke to Lilia Felix, counsel's assistant, regarding the appeal right of my husband. Ms. Felix told petitioner's wife that as her husband has been already sentenced that is nothing to do with his appeal. As such, no appeal was whatsoever contemplated by counsel in contrast of petitioner's wishes to file on appeal after sentencing.

be the more common situation where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken." Id. at 478. In such situations, the Court stated, counsel's effectiveness depends on the answers to two questions: 1) whether counsel consulted with his or her client; and 2) whether counsel was under an obligation to engage in such consultation. Id.

With regard to the first, "antecedent", question, the Court began by stating that "the term 'consult' ... convey[s] a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes". Id. The Court then articulated the consequences of a court's answer to that question, noting first that, if counsel did consult with the defendant, then the failure to file a notice of appeal constitutes ineffective assistance only where that failure is contrary to the express instructions of the defendant. Id. at 478. The Court went on to hold, however, that "if counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id.

In provising the frame work under which to answer this question, the Court held that an attorney's obligation to consult with a defendant regarding appeal arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

Moving to the application of the inquiry discussed above to petitioner's case and proceeding through that inquiry as suggested by the Supreme Court, concluding that petitioner's counsel did not, in fact, consult with petitioner regarding his right to appeal. As noted above, consultation occurs when counsel

3

"advises the defendant about the advantages and disadvantages of taking an appeal" and makes "a reasonable effort to discover the defendant's wishes." **Flores-Ortega,** at 478. By all accounts, petitioner through his wife had only one conversation with his counsel regarding the issue of an appeal. According to petitioner, this conversation was initiated after sentencing when, after being instructed by this Court regarding his right to appeal [Sent. Hearing at 37], he asked his attorney to "submit in an appeal on his behalf."

Indeed, it appears that counsel's response, through his assistant Lilia Felix, to this inquiry was limited to the expression of counsel's belief in the weakness of the appealable issues in petitioner's case. Such a conversation, in a case such as this, does not constitute "consultation" within the meaning of **Flores-Ortega.** In such a case, counsel's emphasis on the merits (or lack thereof) of petitioner's appeal would seen to be nothing more than an attempt to dissuade petitioner from pursuing an appeal and is therefore inconsistent with the Supreme Court's recognition that "consultation" includes an objective presentation of the both the advantages and disadvantages of filing an appeal and the fundamental principle that the decision to appeal "rests with the defendant." See id. at 479.

Further, and more importantly, the record reveals that petitioner's attorney did not make a reasonable effort to discover petitioner's wishes regarding the filing of an appeal. After sentencing petitioner's wife contacted counsel's office to instruct counsel to pursue an appeal on behalf of her husband. During this exchange, counsel's assistant Ms. Lilia Felix revealed that "since petitioner has been already sentenced there is nothing to do with the appeal and for that reason no appeal should be filed on petitioner's behalf." In a situation such as this, where a defendant indicates his general desire for an appeal and never expressly states otherwise, an attorney does not meet his obligation to make a reasonable effort to discover his client's wishes where he neglects to take any affirmative

action to determine his client's intentions prior to the expiration of the period in which a notice of appeal may be filed. Accordingly, it truns to the second question mandated by **Flores-Ortega**: whether petitioner's counsel was under an obligation to consult with his client regarding appeal.

In **Flores-Ortega**, the Court noted that "we expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." 528 U.S. at 481. This is such a case. Here, petitioner's counsel was under an obligation to consult with petitioner regarding his appeal rights, as petitioner's behavior throughout the proceedings against him gave counsel reason to think that "this particular defendant was interested in appealing." As his counsel recognized during the plea hearing [Plea Hrg. at 20-23] petitioner vigorously contested the proceedings against him, maintaining that since neither the offense nor any overt acts with which he is charged occurred in Hawaii, but rather in California, venue was not proper in Hawaii.

In **Flores-Ortega**, the Court noted that "a highly relevant factor" in the inquiry into an attorney's obligation to consult "will be whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. In this case, petitioner provided no such indication. [See Exhibit A] Where a defendant manifest such an obvious commitment to challenging the case against him, and appears, as petitioner does, to be of the honest belief that he was unjustly prosecuted and convicted in Hawaii, his counsel has reason to believe that an appeal might be desired and, accordingly, has a constitutional obligation to consult with his client regarding that option.

Accordingly, petitioner's counsel was obligated to consult with petitioner

about the filing of an appeal and that that attorney, by failing to take active steps to inform petitioner about the advantages of filing an appeal and to discern petitioner's wishes regardin that course of action, did not meet that obligation. For those reasons, petitioner's counsel conduct fell below an objective standard of reasonableness and that petitioner has therefore satisfied the first prong of the test articulated by **Strickland** and **Flores-Ortega.**

Under **Strickland**, as noted above, an attorney's deficient conduct rises to the level of Sixth Amendment violation only where that conduct brings the reliability of the proceeding against the defendant into question. See **Strickland,** at 692. With regard to this inquiry, the Supreme Court in **Flores-Ortega,** while refusing to hold that counsel's deficient performance in failing to consult with a defendant regarding the right to appeal is per se prejudicial, recognized that counsel's unreasonable failure to consult with a defendant who wishes to appeal leads "not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself." **Flores-Ortega,** at 483. That being the case, the Court stated, in order to satisfy the second prong of the **Strickland** inquiry, a defendant need not demonstrate the merits of the specific grounds upon which he would have appealed, but instead need only demonstrate that "counsel's constitutionally deficient performance deprive[d][him] of an appeal he otherwise would have taken." Id. at 484.

Here, petitioner's manifest belief in the erroneous prosecution in Hawaii and his persistent attempts to challenge the proceedings against him, combined with the near certainty of nonfrivolous grounds for petitioner's appeal, satisfy this requirement. Further supporting this conclusion is the almost total absence of reasons why petitioner, had he been informed of his rights and consulted about his wishes, would not have appealed. Further, while in some cases a defendant's behavior may provide an indication that he "seeks an end to judicial

6

proceedings," **Flores-Ortega,** at 480, petitioner's behavior in this case provides no such indication and, indeed, counsels in favor of a contrary conclusion. Upon conclusion of his sentencing, petitioner, apparently convinced of the erroneous prosecution in Hawaii and of the injustice of the sentence against him, was presented with the opportunity to continue his attempts at vindication, at no cost to him, through the filing of an appeal.

Under these circumstances, there seems little doubt that, had he been objectively informed of the options he possessed, petitioner would have filed an appeal. That being the case, petitioner has sufficiently demonstrated that, but for his counsel's deficient performance, he would have taken an appeal and that, therefore, he was deprived of his Sixth Amendment right to effective assistance of counsel. Accordingly, petitioner's motion, pursuant to 28 U.S.C. § 2255, will be granted with respect to this claim.

B.  **The Failure of Petitioner's Counsel to Object At The Outset Of Criminal Proceeding The Improper Venue in Hawaii**

At the outset of petitioner's criminal proceeding, counsel possessed documents indicating that no overt acts occurred in Hawaii and that the declared intention of one of the parties to the transaction—the government's undercover agent, to take the drugs to Hawaii, is not enough to justify venue being laid in Hawaii which rendered petitioner's pled of guilty unknowingly and involuntary made it. See **United States v. Palomba,** 31 F.3d 1456, 1461 (9th Cir. 1994). Any reasonable defense attorney in Mr. Elden's position certainly would have undertaken **some** investigation into the defendant's whereabouts at the time of the crime. Yet counsel did not. In failing to conduct any investigation at all, counsel's performance at guilty plea and sentencing fell well below objective standards of reasonable representation.

Article III, Section 2, Clause 3 of the United States Constitution states the

basic venue requirements for criminal prosecutions under federal law.

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

U.S. Const. art. III, § 2, cl. 3. "The guarantee is for a trial in the state and district where the offense was committed." **United States v. Corona**, 34 F.3d 876, 879 (9th Cir. 1994). Further, this guarantee is applied through Fed.R.Crim.P. 18, which states:

> Except as otherwise permitted by statute of by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

Fed.R.Crim.P. 18.

Here, petitioner advances that an accurate reading of the facts of his case shows no overt acts occurred in Hawaii and that the declared intention of one of the parties to the transaction—the government's undercover [Mr. Rudow] agent—to take the drugs to Hawaii, is not enough to justify venue being laid in Hawaii. Since a government agent cannot be a conspirator, **United States v. Pennell**, 737 F.2d 521, 536 (6th Cir. 1984), the only conspirators were Alejandro Gonzalez-Guerrero and Trick, a/k/a as Viejo. The evidence taken in the light most favorable to the prosecution, shows that these men conspired to sell methamphetamine; the evidence does not show that their agreement was to do so for the purpose of causing the drugs to be resold or distributed in Hawaii. The evidence shows, at most, that petitioner and Trick agreed to a drug transaction that began, was consummated, and ended in California.

It is true that petitioner heard Agent Rudow mention that **he** was going to transport back to Hawaii and distribution on the island of Maui, but Rudow, the

undercover agent, was not a conspirator. Moreover, he knew that the methamphetamine would never be sold in Hawaii because he was facilitating the drug raid that would end the conspiracy in California. Applying the test to the facts in this case, we conclude that venue is not proper in Hawaii because: (1) the petitioner's agreement was made in California; (2) all of the overt acts constituting the offense occurred in California; (3) the locus of the effect of the criminal conduct was exclusively in California, because, while Agent Rudow mentioned Hawaii as **his** final destination, the conspirators did not agree to that, and in truth, even Agent Rudow did not intend to cause the drug to be sent to Hawaii; and (4) California is the venue that is most suitable for fact finding, because petitioner live in California, his family, friends, and potential character witnesses live there and, as petitioner have said, the offense and all of its elements, occurred there. **Corona**, 34 F.3d at 881 (Nevada was proper venue for conspiracy charge, where conspiracy began in Nevada).

Had petitioner's counsel raised a venue objection at the outset of criminal proceeding, the district court would have taken judicial notice of the same fact and dismiss the indictment. Petitioner was prejudiced in the least by his counsel's failure to bring up venue. As such, in failing to conduct any investigation at all regarding the proper venue in Hawaii, counsel's performance at petitioner's criminal proceedings fell below objective standards of reasonable representation. This ineffective assistance of counsel claim, like petitioner's other one, must be granted as well.

## CONCLUSION

Based on the foregoing arguments and authorities, the record in this case and the petition itself, petitioner respectfully urges this Honorable Court to grant him a writ of habeas corpus, or, in the alternative to grant an evidentiary hearing to allow petitioner to prove his case.

Respectfully submitted,

Jesus Cacho
Reg. 93666-198
P.O. Box 7001/A2D
Taft, California 93268

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 26th day of November, 2007, I have mailed a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255, in a sealed envelope, first class postage attached thereto, and deposited same at Taft Institution mail system addressed to the following party:

Thomas J. Brady
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Mona Moana Blvd., Suite 6100
Honolulu, Hawaii  96850

By: _____
Jesus Cacho
Petitioner

# EXHIBIT A



U.S. Department of Justice

*United States Attorney*
*District of Hawaii*

Received: 04/24/06
Reviewed:
Logged: AD
Scanned: DA

*PJKK Federal Building*
*300 Ala Moana Blvd., Room 6-100*
*Honolulu, Hawaii 96850*

(808) 541-2850
FAX (808) 541-2958

April 20, 2006

Mr. David A. Elden
Attorney at Law
11377 West Olympic Blvd., 10th Floor
Los Angeles, CA 90064

    Re: USA v. Jesus Cacho
        Cr. No. No. 05-00164 JMS

Dear Mr. Elden:

    Please be advised that it is our position that in the event that the United States obtains custody of Alexandro Gonzalez-Guerrero from Mexican authorities, it would not inure to the benefit of the defendant. Even assuming that Mr. Cacho's relative in Mexico, who is a law enforcement officer, can assist in the apprehension of Mr. Gonzalez-Guerrero, he would simply be fulfilling his duty as a law enforcement officer. Furthermore, the United States does not believe that it would rely on the defendant as a witness at the trial of co-defendant Gonzalez-Guerrero. It our position that Mr. Cacho testified falsely at his wife's trial.

                                      EDWARD H. KUBO, JR.
                                      United States Attorney
                                      District of Hawaii

                              By  *T Muehleck*
                                  THOMAS MUEHLECK
                                  Assistant U.S. Attorney

TM:rnk

LAW OFFICES
# David A. Elden

11377 West Olypmic Blvd
Tenth Floor
Los Angeles , California 90064
Telephone (310) 478-3100
Fax (310) 478-2200
E-Mail  elden @ innocent.com

May 9, 2006

United States Attorney. District of Hawaii
Attn: AUSA Thoma Muehleck
PJKK Federal Building
300 Ala Maona Blvd., Room 6-100
Honolulu, Hawaii 96850

      Re:    USA v. Jesus Cacho
                  Cr. No. 05-00164 JMS

Dear Mr. Muehleck:

I have received your letter regarding Jesus Cacho's efforts to assist in the apprehension of co-defendant Alexandro Gonzalez-Guerrero, who is presently a fugitive. You have stated that if a Mr. Cacho's relative, a law enforcement officer, were to arrest Gonzalez-Guerrero, the officer "would simply be doing his duty," as if this fact somehow extinguishes Mr. Cacho's efforts. It is always true that law enforcement officers who are able to arrest suspects based on cooperation information are "doing their duty." The information given by defendants make such arrests possible in the first place.

Mr. Cacho has done more than simply encourage the arrest of Gonzalez-Guerrero. Mr. Cacho has given Mexican authorities a description of Gonzalez-Guerrero. He has provided information essential to the identification and location of Gonzalez-Guerrero. He has reviewed city maps and given directions as to where Gonzalez-Guerrero can be located. Without this information, the arrest of Gonzalez-Guerrero would not be possible. We are assuming that the apprehension of Gonzalez-Guerrero, who was a larger player in the conspiracy and responsible for large quantities of narcotics trafficking, would be of interest to the government. Furthermore. it is likely that Gonzalez-Guerrero has continued

1

AUSA Thoma Muchleck
Re:   USA v. Jesus Cacho
      Cr. No. 05-00164 JMS

his trafficking activities, and we assume that you and law enforcement are interested in the interdiction of narcotics smuggled into the U.S., especially when the arrest can be made with little or no effort or expenditures.

I understand that you have taken issue with Mr. Cacho's trial testimony. We believe the apprehension of Gonzalez-Guerrero is no less valuable for the interests of the government and law enforcement. We do not agree with your characterization of his testimony, and in any event, we regard it as a separate issue. Your letter appeared to discourage Mr. Cacho's efforts to facilitate the arrest of Gonzalez-Guerrero. If you are not interested in the apprehension of Gonzalez-Guerrero, please let us know, so that we will seek the assistance of other law enforcement individuals if this becomes necessary to accomplish his transfer to the United States.

David A. Elden
Attorney at Law

2

U.S. Department of Justice

United States Attorney
District of Hawaii

Received: [handwritten]
Reviewed: [handwritten]
Logged: [handwritten]
Scanned: [handwritten]

PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii 96850

(808) 541-2850
FAX (808) 541-2958

August 10, 2005

Mr. David A. Elden
Attorney at Law
11377 W. Olympic Blvd., 10th Floor
Los Angeles, CA 90064

    RE: United States v. Jesus Cacho
        Cr. No. 05-00164-03 SOM

Dear Mr. Elden:

    The following statement of Mr. Cacho is provided pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Criminal Local Rule 16.1:

    Jesus Antonio Cacho was born March 27, 1971 and has California driver's license number D6697605, social security number 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.

    Jesus Cacho is from Culiacan, Sinaloa, Mexico. Jesus Cacho is currently employed with Active Computer Solutions S.A. de C.V. in Tijuana, Mexico, as a computer network specialist. Jesus Cacho currently resides with his wife, Jesika Cacho at 465 Jamul Court in Chula Vista, California. Their home telephone number is (619)271-8875. A pregnant female named Leticia, approximately 26 years of age, also resides with Jesus Cacho and Jesika Cacho.

    About one year ago, Jesus Cacho met a man called "Trick" or "Viejo," actual name unknown, at a disco in Tijuana called La Taverna de Infante. Trick is about 35 to 38 years of age and is also from Culiacan. Trick lives in the Soler area of Tijuana and drives a white Volkswagen Jetta and a primer grey Saturn. Trick's telephone number is 52-664-199-5008. Trick has a cousin named Iris Selene Valenzuela-Sauceda, who assists Trick with drug distribution activities. Cacho had previously provided Valenzuela-Sauceda's name to UCE-3442 as a recipient for drug proceeds being wire transferred by UCE-3442.

Jesus Cacho knows Trick only as a drug trafficker. Trick works with a man named Alex, last name unknown (LNU). Jesus Cacho talked to Alex LNU over the telephone on only one occasion when Trick put Alex LNU on the telephone. Jesus Cacho has never met Alex LNU in person. According to Trick, Alex LNU has a drug habit. Jesus Cacho does not know how Trick obtains drugs. Jesus Cacho became involved with Trick because Jesus' son had died of cancer and the family had accumulated high medical bills.

Jesus Cacho has helped Trick move drugs on only two occasions. On the first occasion, about six months ago, Jesus Cacho picked up a box of what Jesus believed to be about four pounds of drugs from an unknown male in Ensenada, Mexico. Jesus Cacho then drove the box to a Carl's Jr. restaurant in Soler where he gave it to Trick. Jesus Cacho earned $500 for delivering the box.

On a second occasion, Jesus Cacho picked up a box containing about two pounds of drugs at Trick's request from Costco Warehouse store in Ontario, California. Jesus picked up the box from an unknown Hispanic male, about 40 years of age, 5'1" tall, fat, who drove an older grey pickup truck, possibly a Chevrolet. The meeting took place between 6:30 a.m. and 7:00 a.m. Immediately after taking custody of the box, Jesus Cacho drove the box to Santa Ana, California, and delivered it to UCE-3442. Cacho was told by Trick that UCE-3442 was trick's long-time friend and a drug distributor from Hawaii. Jesus Cacho was supposed to earn $1000 for the delivery to UCE-3442, once the money owed for the drugs was collected from UCE-3442. Cacho expected to receive payment later today (April 26, 2005).

During the morning hours of April 26, 2005, Jesus Cacho was telephonically contacted by Trick, who asked Cacho to meet with UCE-3442 in Oceanside, California. Trick instructed Cacho to pick up two (2) "Playstations" from UCE-3442 and bring them to him (Trick) in Tijuana. Cacho understood that the "Playstations" would contain the cash proceeds from the sale of drugs in Hawaii, that had been delivered to UCE-3442 by Cacho approximately three weeks earlier. Trick also informed Cacho that Cacho, UCE-3442, Alex LNU and Trick would be meeting in Tijuana later the same day to plan future drug transactions.

Cacho said that his wife, Jesika Cacho, had no knowledge about Cacho;s drug distribution activities. Cacho said that there were no drugs or guns stored at his residence, and that his only involvement in drug distribution was during the incidents described above.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By  *T. Muhluh*
THOMAS MUEHLECK
Assistant U.S. Attorney

TM:rnk

3