IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JESUS CACHO, | CV. NO. 07-00404 JMS |
| | CR. NO. 05-00164-02 JMS |
| Petitioner, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

UNITED STATES' RESPONSE TO MOTION UNDER 28 U.S.C.
§ 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY
A PERSON IN FEDERAL CUSTODY; EXHIBITS A-F

EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

THOMAS MUEHLECK 3591
Assistant U.S. Attorney
Room 6100, PJKK Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Tom.Muehleck@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

## Table of Contents

Page(s)

Table of Authorities . . . . . . . . . . . . . . . . .  i-ii

I.    PROCEDURAL BACKGROUND . . . . . . . . . . . . . . .  1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . .  3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . .  6

      A.   Cacho's Guilty Plea was Not Unlawfully Induced . . . .  6

      B.   Cacho's Conviction was Not Based on Unlawfully
           Obtained Evidence or on an Unlawful Arrest . . . . . .  8

      C.   The United States did not Fail to Disclose
           Evidence Favorable to Cacho . . . . . . . . . . . . .  9

           1.   Grand Jury Minutes are Generally Not
                Subject to Inspection . . . . . . . . . . . .  10

           2.   No Favorable or Exculpatory Evidence
                Pertaining to an "Informant" Exists . . . . . .  10

      D.   Both Mr. Elden and Mr. Domingo at all Times
           Provided Reasonable and Competent Representation . .  11

           1.   Legal Standards . . . . . . . . . . . . . . .  12

           2.   Cacho Informed Counsel that He Did Not
                Want to File an Appeal . . . . . . . . . . .  14

           3.   Counsels' Failure to Object to Venue Does
                Not Amount to Ineffective Assistance of Counsel  17

                a.   Conspiracy Count . . . . . . . . . . . .  17

                b.   Aiding and Abetting Count . . . . . . .  19

                c.   Cacho Waived his Venue Objection by
                     Pleading Guilty . . . . . . . . . . . .  20

           4.   Cacho Fails to Allege and Prove Prejudice
                as a Result of the Performance of Counsel . . .  20

          a.   Failure to File Notice of Appeal Did
              Not Prejudice Cacho . . . . . . . . . 21

          b.   Cacho was Not Prejudiced by Counsel's
              Failure to Object to Venue     . . . . 22

   E.  No Evidentiary Hearing is Required . . . . . . . . 22

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 23

2

Table of Authorities

Cases                                                                    Pages(s)

Andrews v. United States,
      817 F.2d 1277 (7th Cir. 1987)  . . . . . . . . . . . . .   18

Brady v. Maryland,
      373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . .   11

Branzburg v. Hayes,
      408 U.S. 665 (1972) . . . . . . . . . . . . . . . . . . .   9

Herzog v. United States,
      226 F.2d 561 (9th Cir. 1955) . . . . . . . . . . . . . .   10

Hill v. Lockhart,
      474 U.S. 52 (1985) . . . . . . . . . . . . . . . . . . .   21

Pittsburgh Plate Glass Co. v. United States,
      360 U.S. 395 (1959) . . . . . . . . . . . . . . . . . .   10

Roe v. Flores-Ortega,
      528 U.S. 470 (2000) . . . . . . . . . . . . . . . .  14, 16

Shah v. United States,
      878 F.2d 1156 (9th Cir. 1989),
      cert. denied, 493 U.S. 869 (1989) . . . . . . . . . .   23

Shraiar v. United States,
      736 F.2d 817 (1st Cir. 1984) . . . . . . . . . . . . .   23

Strickland v. Washington,
      466 U.S. 668 (1984) . . . . . . . . . . . . . . . . .  passim

United States v. Barnard,
      490 F.2d 907 (9th Cir. 1973) . . . . . . . . . . . . .   18

United States v. Calandra,
      414 U.S. 338 (1974) . . . . . . . . . . . . . . . . . .   8

United States v. Calderon,
      243 F.3d 587 (9th Cir. 2001) . . . . . . . . . . . . .   20

United States v. Cordero,
      668 F.2d 32 (1st Cir. 1981) . . . . . . . . . . . . .   18

Cases                                                        Pages(s)

United States v. Corona,
       34 F.3d 876 (9th Cir. 1994) . . . . . . . . . . . . . . 17

United States v. Naranjo,
       14 F.3d 145 (2d Cir. 1994) . . . . . . . . . . . . . . 17

United States v. Quan,
       789 F.2d 711 (9th Cir. 1986),
       cert. denied, 478 U.S. 1044 (1986) . . . . . . . . 22, 23

United States v. Rommy,
       506 F.3d 108 (2d Cir. 2007) . . . . . . . . . . . . . 18

United States v. Schaflander,
       743 F.2d 714 (9th Cir. 1984),
       cert. denied, 470 U.S. 1058 (1985) . . . . . . . . 22, 23

United States v. Smith,
       198 F.3d 377 (2d Cir. 1999) . . . . . . . . . . . . 17-19

Rules and Statutes

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . 1, 19

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . 1, 19

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . passim

Fed.R.Crim.P. 6. . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Crim.P. 6(e) . . . . . . . . . . . . . . . . . . . 10

UNITED STATES' RESPONSE TO MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

The United States of America, by its undersigned

counsel, hereby responds to Jesus Cacho's ("Cacho") motion to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

I.  PROCEDURAL BACKGROUND

On May 4, 2005, a federal grand jury in the District of

Hawaii returned a two-count Superseding Indictment against Cacho,

along with two co-defendants, Alejandro Gonzalez-Guerrero

("Gonzalez-Guerrero") and Cacho's wife, Jesika Cacho.  Count 1

charged that from a time unknown but from at least on or about

March 12, 2005, to on or about April 26, 2005, in the District of

Hawaii and elsewhere, all three co-defendants conspired to

distribute and possess with intent to distribute in excess of 50

grams of methamphetamine, approximately six pounds, in violation

of 21 U.S.C. § 841(a)(1).  Count 2 charged that on or about April

7, 2005, in the District of Hawaii and elsewhere, Cacho and

Gonzalez-Guerrero each, aiding and abetting one another,

knowingly and intentionally possessed with intent to distribute

in excess of 50 grams of methamphetamine, approximately two

pounds, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Cacho initially plead not guilty to the charges.  On

December 5, 2005, he withdrew his not guilty plea and pled guilty

to both counts as charged, without a plea agreement, before the

Honorable J. Michael Seabright.

On August 7, 2006, Cacho was sentenced to concurrent 108-month terms of imprisonment, to be followed by concurrent four-year terms of supervised release on each count. In addition, Cacho was ordered to pay a $200 special assessment and a $15,000 fine. Final judgement was filed on August 10, 2006.[1] Cacho did not file an appeal.

On July 24, 2007, Cacho timely filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. See 28 U.S.C. § 2255. In his motion, Cacho claims that: (1) his guilty plea was unlawfully induced and he did not understand the consequences of his plea; (2) he was convicted based on evidence obtained pursuant to an unlawful arrest; (3) the prosecution failed to disclose favorable evidence and did not allow him to review grand jury minutes; and (4) ineffective assistance of counsel. Cacho § 2255 Motion at ¶ 12.

In order to respond to the ineffective assistance of counsel claim raised in Cacho's § 2255 motion, the United States, on December 12, 2007, filed a motion with this Court seeking a judicial finding that, by filing the instant motion, Cacho has waived his attorney-client privilege with respect to certain communications with David A. Elden and William M. Domingo, to the

---

[1] On December 19, 2007, an Amended Judgment was filed reflecting that payment of the criminal monetary penalties are to be paid during the period of supervision.

2

extent such communications involve or are related to Cacho's
ineffective assistance of counsel claims.  On December 14, 2007,
the Court issued an order finding that Cacho waived his attorney-
client privilege with respect to certain communications between
Cacho and Messr. Elden and Domingo related to the ineffective
assistance of counsel claim made in the instant § 2255
proceedings.

II.  FACTUAL BACKGROUND

        The instant case involved a conspiracy to distribute
and to possess with intent to distribute drugs.  Specifically,
the case focused on an investigation into a crystal
methamphetamine and cocaine trafficking organization operating
since 2003 in Mexico, California, Oregon, and Hawaii.  PSR at ¶
11.[2]  During the investigation, Gonzalez-Guerrero was identified
as an individual responsible for the delivery of more than 300
pounds of methamphetamine to Hawaii.  PSR at ¶ 11.

        During March 2005, an undercover agent participated in
numerous monitored telephone conversations with Gonzalez-
Guerrero.  PSR at ¶ 12.  During these calls, Gonzalez-Guerrero
confirmed that he had previously supplied individuals in Maui
with methamphetamine and was willing to supply the undercover
agent with two pounds of methamphetamine.  PSR at ¶ 12.  On April

_____

        [2] A true and correct copy of the presentence repport ("PSR")
has been filed with the Court under separate cover.

5, 2005, Gonzalez-Guerrero informed the undercover agent that a courier known as "Cuco" (later identified as Cacho) would deliver the two pounds of methamphetamine to the undercover agent in Orange County, California on April 7, 2005. PSR at ¶ 12. On April 6, 2005, the undercover agent and Cacho engaged in a monitored telephone conversation during which Cacho informed the undercover agent that he would deliver the methamphetamine on April 7, 2005. PSR at ¶ 13. On April 7, 2005, Cacho met the undercover agent in the parking lot of a shopping mall in Santa Ana, California and provided the undercover agent with a box containing two packages covered in duct tape. PSR at ¶ 13. Subsequent analysis by a Drug Enforcement Agency ("DEA") laboratory established that the packages contained an aggregate total of 895.3 grams, net weight, of d-methamphetamine hydrochloride with a 99-percent purity. PSR at ¶ 13. During the meeting on April 7, 2005, Cacho advised the undercover agent that he could call him (Cacho) or Gonzalez-Guerrero regarding future transactions. PSR at ¶ 14. Cacho also told the undercover agent that after the drugs were sold in Hawaii, the agent should call Cacho and Cacho would then call Gonzalez-Guerrero. PSR at ¶ 14.

On April 13, 2005, the undercover agent sent $1,000 to Gonzalez-Guerrero via Western Union wire transfer. PSR at ¶ 15. Later that same day, Cacho instructed the undercover agent to send another $1,500 via Western Union to a partner of Gonzalez-

4

Guerrero's.  PSR at ¶ 15.  Cacho also told the undercover agent
that he (Cacho) would supply the undercover agent with an
additional four pounds of methamphetamine after the undercover
agent paid for the initial two pounds of methamphetamine.  PSR at
¶ 15.  Cacho also arranged to meet the undercover agent in
California the following week for payment.  PSR at ¶ 15.

On April 14, 2005, Cacho called the undercover agent
and inquired if the undercover agent had made "the deposit."  PSR
at ¶ 17.  The undercover agent confirmed that he had sent a wire
transfer to Gonzalez-Guerrero and asked Cacho about the procedure
for providing the drug proceeds to Cacho or Gonzalez-Guerrero.
PSR at ¶ 17.  Cacho replied that he was not sure about the
procedure, but advised that he could take the undercover agent to
Mexico in his car in order for the undercover agent to deliver
the proceeds to Gonzalez-Guerrero, or he (Cacho) could take the
proceeds to Gonzalez-Guerrero himself.  PSR at ¶ 17.

On April 26, 2005, pursuant to instructions from
Gonzalez-Guerrero, Cacho met the undercover agent at a restaurant
in Oceanside, California.  PSR at ¶ 25-27.  During the meeting,
the undercover agent agreed to give Cacho three DVD players
containing cash for transport across the Mexican border to
Gonzalez-Guerrero.  PSR at ¶ 27.  Cacho was arrested after
exiting the restaurant.  PSR at ¶ 27.

III.   ARGUMENT

A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255.

Cacho raises four grounds in his § 2255 motion: (1) his guilty plea was unlawfully induced and he did not understand the consequences of his plea; (2) he was convicted based on evidence obtained pursuant to an unlawful arrest; (3) the prosecution failed to disclose favorable evidence; and (4) ineffective assistance of counsel.  Cacho § 2255 Motion at ¶ 12.

A.   Cacho's Guilty Plea was Not Unlawfully Induced

Cacho first claims that his guilty plea was unlawfully induced.  Cacho § 2255 Motion at ¶ 12.  Specifically, Cacho states that he did not understand the consequences of a guilty plea, including the maximum penalties and restitution payments he faced.  Cacho § 2255 Motion at ¶ 12.  Cacho's § 2255 Motion is devoid of any specific facts in support of his claim that he was unlawfully induced to plead guilty.  In addition, Cacho fails to address this issue in his Memorandum of Law.  Regardless, Cacho's claim is without merit and is not supported by the record.

6

On December 5, 2005, a hearing was held on Cacho's Motion for Withdrawal of Not Guilty Plea and to Plead Anew. A true and correct copy of the transcript of Cacho's change of plea hearing is attached as Exhibit A. At the change of plea hearing, Judge Seabright, prior to accepting Cacho's guilty plea, engaged in a thorough plea colloquy and asked Cacho a series of questions to ensure that his plea was valid and voluntary, that he understood the rights he was giving up, and that he was, in fact, guilty of the charges. Exhibit A at 2-3. Specifically, Judge Seabright asked, and Cacho affirmed, that: (1) no one made any promises or assurances to him in an effort to get him to plead guilty; (2) no one threatened or forced him in any way to plead guilty; and (3) that he was pleading guilty of his own free will and choice. Exhibit A at 5-6.

Upon request of the Court, the United States recited the maximum penalties that applied to each count of the indictment. Exhibit A at 7. The Court then inquired if Cacho understood that he faced: (1) a mandatory term of imprisonment of ten years; (2) a maximum term of imprisonment of up to life; (3) a fine of up to $8 million; (4) a period of supervised release of at least five years; and (5) a special assessment of $200. Exhibit A at 7-8. Cacho stated that he understood each of the above penalties. Exhibit A at 7-8.

The Court further went on to ensure that Cacho understood the rights he would be giving up by entering a plea of guilty including, among other rights, the right to a trial by jury, the right not to incriminate himself, and certain civil rights. Exhibit A at 8-11. Again, Cacho stated that he understood the rights he would be giving up by pleading guilty. Exhibit A at 8-11.

In addition, both Mr. Elden and Mr. Domingo fully explained to Cacho the consequences of pleading guilty to the charges prior to the December 5, 2005, change of plea hearing. A true and correct copy of the declaration of David A. Elden is attached as Exhibit B. A true and correct copy of the declaration of William M. Domingo is attached as Exhibit C. See Exhibit B at ¶ 2; Exhibit C at ¶ 2. Accordingly, Cacho's claim is unfounded.

B. Cacho's Conviction was Not Based on Unlawfully Obtained Evidence or on an Unlawful Arrest

Cacho next claims that his Fourth Amendment rights were violated upon his arrest because officers never furnished an arrest warrant, never presented probable cause, and failed to read him his Miranda rights. Cacho does not address this claim in his Memorandum of Law.

The grand jury functions to determine whether there is probable cause to believe that a certain person committed a certain offense. United States v. Calandra, 414 U.S. 338, 343

8

(1974); Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972).  In the
instant case, on April 20, 2005, a federal grand jury in the
District of Hawaii returned a two-count indictment against Cacho,
along with co-defendants Gonzalez-Guerrero and Jesika Cacho.
Thus, since a grand jury returned an indictment against Cacho,
probable cause clearly existed.  On that same day, the United
States District Court for the District of Hawaii issued a warrant
for Cacho's arrest.  A true and correct copy of Cacho's arrest
warrant is attached as Exhibit D.  Lastly, upon his arrest on
April 26, 2005, FBI Special Agent Joel Rudow advised Cacho of his
Miranda rights.  In addition, Special Agent Rudow presented Cacho
with a Spanish version of his Miranda rights on FBI Form FD-395.
Cacho read Form FD-395 aloud in Spanish and signed a waiver of
his Miranda rights.  A true and correct copy of Cacho's signed
FBI Form FD-395 is attached as Exhibit E.  Accordingly, each of
Cacho's claims are entirely unfounded and without merit.

   C.   The United States did not Fail to Disclose
        Evidence Favorable to Cacho

        Cacho claims that the United States failed to disclose
favorable evidence.  Cacho states that the United States never
provided him with an opportunity to review the grand jury minutes
and failed to provide him with "exculpatory evidence pertaining
to the Informant" based on the informant's testimony and
information provided to agents and the government.  Cacho § 2255
Motion at ¶ 12.  Again, Cacho fails to provide any specific facts

supporting this claim and does not address this issue in his
Memorandum of Law.

    1.  <u>Grand Jury Minutes are Generally Not
          Subject to Inspection</u>

       Pursuant to Rule 6 of the Federal Rules of Criminal
Procedure, an accused is generally not entitled to inspect grand
jury minutes. Fed.R.Crim.P. 6(e). A court may authorize the
disclosure of grand jury matters in certain limited
circumstances. <u>See generally</u> <u>Herzog v. United States</u>, 226 F.2d
561, 566 (9th Cir. 1955); <u>Pittsburgh Plate Glass Co. v. United
States</u>, 360 U.S. 395, 399-400 (1959)(noting that disclosure is
proper where "the ends of justice require it" and where the
defense shows a "particularized need"). In the instant case,
Cacho never requested that the Court authorize disclosure of the
grand jury minutes. Even if such a request had been made,
however, the United States is unaware of, and Cacho has failed to
allege or prove, any possible reason why the Court would have
taken exception to the general rule of grand jury secrecy and
authorize such disclosure in the instant case. <u>See</u> Fed.R.Crim.
P. 6. Thus, Cacho fails to present a valid basis for § 2255
relief.

    2.  <u>No Favorable or Exculpatory Evidence
          Pertaining to an "Informant" Exists</u>

       Cacho does not identify the allegedly favorable
evidence that the United States failed to disclose. Further,

Cacho does not identify or even describe the informant he is referring to.  Regardless, the United States submits that there was no exculpatory or favorable material to disclose pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  Moreover, there were no informants involved in the instant case.[3]  Again, Cacho's claim lacks merit.

   D.  Both Mr. Elden and Mr. Domingo at all Times
       Provided Reasonable and Competent Representation

       As previously mentioned, Cacho was represented by retained counsel, Mr. Elden, who was admitted pro hac vice, and by local counsel, Mr. Domingo.  Cacho claims, again without providing any specific supporting facts, that his "Retained Attorney" failed to provide adequate and Constitutional representation as mandated by the Sixth Amendment.  Cacho § 2255 Motion at ¶ 12.  In his Memorandum of Law, Cacho claims that

_____

   [3] The United States speculates, but cannot say with certainty due to the lack of facts contained in Cacho's § 2255 Motion, that the "informant" Cacho refers to may be the wife of a defendant in a separate drug case.  This particular defendant's wife received a phone call from a drug supplier while her husband was imprisoned.  The defendant's wife then contacted the FBI and provided them with the drug supplier's telephone number.  An undercover FBI agent contacted the drug supplier who offered to supply drugs to the undercover FBI agent.  The drug supplier subsequently provided the undercover FBI agent with Cacho's name and telephone number as the person who would be delivering the drugs.  Accordingly, the defendant's wife was not an "informant." She had no dealings with Cacho and the United States did not receive any exculpatory evidence from her with respect to Cacho.

11

counsel[4] was ineffective for failing to file a timely notice of appeal and because counsel failed to object to improper venue at the outset of criminal proceedings.

  1.  Legal Standards

  The Supreme Court, in Strickland v. Washington, 466 U.S. 668 (1984), set forth a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel.  In order for a criminal defendant's sentence to be overturned based on ineffective assistance of counsel, the defendant must first prove that the performance of counsel, considering all the circumstances, was so deficient that he or she was not functioning as "counsel" as guaranteed under the Sixth Amendment.  Second, the defendant must prove that the deficient performance prejudiced the defendant by depriving him of a fair trial.  Id. at 691-92.  However, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  Id. at 697.

  To show that counsel's performance fell below an objective standard of reasonableness, the defendant must identify

---

  [4] Cacho, in his Memorandum of Law, does not specify whether his claim of ineffective assistance of counsel is directed at his retained counsel, Mr. Elden, or at local counsel, Mr. Domingo. The United States's response addresses the representation provided by, and includes the declarations of, both Mr. Elden and Mr. Domingo.

12

the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. In making that determination, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id.

Even if the court finds that counsel's performance was deficient, relief cannot be granted absent a showing of prejudice. To affirmatively prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different. Id. at 694. According to Strickland, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The defendant who raises a claim of ineffective assistance of counsel has a very heavy burden to bear. As the court stated in Strickland: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved

13

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

### 2. Cacho Informed Counsel that He Did Not Want to File an Appeal

In his Memorandum of Law, Cacho claims that after he was sentenced, he requested that counsel file a notice of appeal. Specifically, Cacho claims that he called his wife and instructed her to contact his attorney to file a notice of appeal. Cacho Memorandum at 2 n.1. Cacho's wife allegedly called counsel's office and spoke to an assistant named Lilia Felix. Cacho Memorandum at 2 n.1. Ms. Felix allegedly told Cacho's wife that "as her husband has [sic] already been sentenced that [sic] is nothing to do with his appeal." Cacho Memorandum at 2 n.1. In addition, Cacho claims that counsel failed to consult with him regarding his right to appeal. Cacho states that had counsel consulted with him and informed him of his options, he "would likely have filed an appeal."[5] Cacho Memorandum at 2. Cacho claims, citing Roe v. Flores-Ortega, 528 U.S. 470 (2000), that counsel should have had reason to believe that he wanted to file an appeal because he demonstrated an "obvious commitment to challenging the case against him." Cacho Memorandum at 5.

---

[5] Interestingly, in his § 2255 Motion, Cacho claims that the reason he did not raise any of the instant § 2255 issues on direct appeal is because his "lawyer adviced [sic] and persuaded not to file any direct appeal." Cacho § 2255 Motion at ¶ 12(b). This directly contradicts Cacho's claim that counsel failed to consult with him regarding filing an appeal.

14

Cacho's allegations, if true, would undoubtedly support a claim of ineffective assistance of counsel.  However, none of Cacho's allegations have any merit or basis in fact.  At sentencing, Judge Seabright informed Cacho of his appellate rights and Cacho specifically responded that he understood those rights.[6]  Exhibit F at 37-38.  In addition, as both Mr. Elden and Mr. Domingo indicate in their respective declarations, Cacho never indicated a desire to appeal his case.  Exhibit B at ¶¶ 5-7; Exhibit C at ¶¶ 4, 6-7.  Contrary to Cacho's claim, both Mr. Elden and Mr. Domingo consulted with Cacho following his sentencing and once again informed him of his appellate rights.  Exhibit B at ¶ 6; Exhibit C at ¶ 7.  Cacho indicated to them that he did not want to appeal.  Exhibit B at ¶ 6; Exhibit C at ¶ 7.  Accordingly, Cacho's claim that Mr. Elden and Mr. Domingo failed to consult with him and inform him of his appellate options is completely unfounded.

With respect to Cacho's claim that his wife called counsel's office to request that an appeal be filed, Mr. Elden, in his declaration, indicates that he does have an assistant named Lilia Felix.  Exhibit B at ¶ 7.  Ms. Felix, however, does not recall receiving a telephone call from Cacho's wife requesting that an appeal be filed on her husband's behalf.

---

[6] A true and correct copy of the transcript of Cacho's Sentencing is attached as Exhibit F.

Exhibit B at ¶ 7.  Mr. Elden and Mr. Domingo both indicate that neither they, nor anyone in their respective offices, received a call from Cacho's wife regarding Cacho's desire to file an appeal.  Exhibit B at ¶ 7; Exhibit C at ¶ 6.

Lastly, Cacho claims that counsel should have had reason to believe that he would want to file an appeal based on his "persistent attempts to challenge the proceedings against him."  Cacho Memorandum at 6.  As Cacho, himself, quotes from <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000), "a guilty plea reduces the scope of potentially appealable issues and . . . such a plea may indicate that the defendant seeks an end to judicial proceedings."  Cacho Memorandum at 5.  Cacho claims that he provided no indication that he sought an end to judicial proceedings.  However, Cacho either ignores or fails to recognize that he, in fact, pled guilty to all charges against him.  Contrary to his assertions, Cacho never gave Mr. Elden or Mr. Domingo any indication that he wanted to file an appeal.  In fact, Cacho expressly informed counsel that he did not want to appeal.  Mr. Elden and Mr. Domingo, by not filing an appeal, were merely respecting and carrying out their client's express desire not to file an appeal.  Their conduct can hardly be said to fall outside the range of reasonable professional assistance.

16

3.   Counsels' Failure to Object to Venue Does
     Not Amount to Ineffective Assistance of Counsel

Cacho claims that counsel was ineffective for failing
to object at the outset of criminal proceedings to improper venue
in Hawaii since no overt acts occurred in Hawaii.  Cacho states
that the undercover agent's declared intention to take the drugs
to Hawaii was not an adequate basis to justify venue in Hawaii.
Cacho alleges that Mr. Elden's representation was rendered
ineffective by his failure to investigate Cacho's whereabouts at
the time of the crime.  In addition, Cacho claims that the
allegedly improper venue renders his guilty plea unknowing and
involuntary.  Cacho Memorandum at 7.  Cacho's claims are wholly
untenable.

a. Conspiracy Count

Count 1 of the Superseding Indictment charged that in
the District of Hawaii and elsewhere, Gonzalez-Guerrero, Cacho,
and Jesika Cacho conspired with each other to knowingly and
intentionally distribute and possess with intent to distribute a
quantity of methamphetamine.  For conspiracy offenses, venue is
proper in any district where the agreement was formed or in which
any conspirator performed an overt act.  United States v. Corona,
34 F.3d 876, 879 (9th Cir. 1994); United States v. Smith, 198
F.3d 377, 382 (2d Cir. 1999)(citing United States v. Naranjo, 14
F.3d 145, 146 (2d Cir. 1994)).  It is widely acknowledged that a
telephone call can constitute an overt act for purposes of venue

17

if it furthers the conspiracy.  E.g., United States v. Barnard,
490 F.2d 907, 910 (9th Cir. 1973); Smith, 198 F.3d at 382; United
States v. Rommy, 506 F.3d 108, 120-21 (2d Cir. 2007); United
States v. Strickland, 493 F.2d 182, 187 (5th Cir. 1974).  In
addition:

> [w]hen one of the participants in a telephone call is a
> non-conspirator, such as a government actor, . . . a
> call in furtherance of the conspiracy placed by a
> conspirator outside the district to a government actor
> within the district is sufficient to establish venue in
> the district with regard to any member of the
> conspiracy."

Rommy, 506 F.3d at 120.  Courts have also held that "a telephone
call placed by a government actor within a district to a
conspirator outside the district can establish venue within the
district provided the conspirator uses the call to further the
conspiracy."  Id. at 122.  See United States v. Cordero, 668 F.2d
32 (1st Cir. 1981); Andrews v. United States, 817 F.2d 1277 (7th
Cir. 1987).

        In the instant case, both Cacho and Gonzalez-Guerrero
exchanged numerous telephone calls with undercover FBI Special
Agent Joel Rudow, who was posing as an individual interested in
distributing drugs on the island of Maui in Hawaii.  Between
March 12, 2005, and April 26, 2005, Cacho and Gonzalez-Guerrero
placed or received approximately sixty-one telephone calls to or
from Special Agent Rudow while Special Agent Rudow was in Hawaii.
These calls either pertained to the ability of the co-

conspirators to supply Special Agent Rudow with methamphetamine for distribution in Hawaii or related to details regarding how Special Agent Rudow should transfer drug proceeds from Hawaii to the co-conspirators. Accordingly, numerous overt acts in furtherance of the conspiracy occurred in Hawaii and venue was proper in Hawaii.

b.  Aiding and Abetting Count

With respect to aiding and abetting offenses, venue is proper where the defendant's accessorial acts were committed or where the underlying crime occurred. Smith, 198 F.3d at 383. In the instant case, Cacho and Gonzalez-Guerrero were charged with aiding and abetting one another in the possession with intent to distribute a quantity of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. As discussed above, both Cacho and Gonzalez-Guerrero engaged in numerous telephone conversations with Special Agent Rudow while Special Agent Rudow was in Hawaii. These conversations related to, among other things, Cacho's and Gonzalez-Guerrero's ability to supply Special Agent Rudow with methamphetamine for distribution in Hawaii. Thus, venue in Hawaii was proper with respect to both counts of the Superseding Indictment and neither Mr. Elden's, nor Mr. Domingo's representation fell outside the range of professionally competent assistance.

     c.   <u>Cacho Waived his Venue Objection by</u>
         <u>Pleading Guilty</u>

Contrary to Cacho's assertion, the issue of venue has absolutely no bearing on the validity, and knowing and voluntary nature of Cacho's guilty plea. As briefly mentioned above, Cacho's guilty plea complied with all requirements of Rule 11 of the Federal Rules of Criminal Procedure. Therefore, even if venue was improper in Hawaii, which it clearly was not, Cacho entered a valid guilty plea and thus waived any objection he may have had as to venue. <u>United States v. Calderon</u>, 243 F.3d 587, 590 (9th Cir. 2001).

    4.   <u>Cacho Fails to Allege and Prove Prejudice</u>
       <u>as a Result of the Performance of Counsel</u>

As discussed above, all of Cacho's claims regarding counsels' alleged ineffectiveness lack any factual or legal basis and counsels' performance did not fall below an objective standard of reasonableness. Cacho, therefore, cannot possibly claim to have suffered prejudice where counsels' representation was objectively reasonable and effective. Even if Mr. Elden's and Mr. Domingo's performance did fall below an objective standard of reasonableness, which it clearly did not, Cacho fails to prove prejudice as a result of any of his allegations of ineffectiveness.

20

a.  Failure to File Notice of Appeal Did
     Not Prejudice Cacho

With respect to Cacho's claim that counsel was ineffective for filing a notice of appeal as he had requested, Cacho has not alleged, nor could he possibly prove, prejudice as set forth in Strickland v. Washington, 466 U.S. 688 (1984).  The Court in Strickland stated that in order to prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  Cacho has not alleged that but for counsels' alleged ineffectiveness, there is a reasonable probability that he would not have pled guilty, but would have instead proceeded to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985)(noting that in order to satisfy the prejudice prong of Strickland in the context of a guilty plea, "the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty").  In addition, counsels' alleged failure to file an appeal does not, in any way, undermine confidence in the outcome of Cacho's proceeding.  The United States cannot discern or imagine any possible prejudice resulting from counsels' alleged failure to file an appeal.

21

       b.  <u>Cacho was Not Prejudiced by Counsel's</u>
          <u>Failure to Object to Venue</u>

     Cacho claims that he was prejudiced by counsels'
failure to object to venue because had counsel objected, the
Court would have dismissed the indictment.  Cacho Memorandum at
9.  Cacho's allegation is insufficient to satisfy the <u>Strickland</u>
requirement of prejudice.  As discussed above, had counsel
objected to venue, that objection would not likely have succeeded
as venue was proper in Hawaii.  Therefore, an objection by
counsel regarding venue would have likely had no effect on the
proceeding.

    E.  <u>No Evidentiary Hearing is Required</u>

     Section 2255 provides that a court shall hold an
evidentiary hearing on a prisoner's § 2255 motion "unless the
files and records of the case conclusively show that the prisoner
is entitled to no relief."  28 U.S.C. § 2255.

     The Ninth Circuit has held, however, that the standard
for an evidentiary hearing is whether the prisoner has made
specific factual allegations, which if true, state a claim on
which relief can be granted.  <u>United States v. Schaflander</u>, 743
F.2d 714, 717 (9th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1058
(1985).  Mere conclusory statements are insufficient to require
an evidentiary hearing.  <u>Id.</u> at 721.  The allegations of the
prisoner need not be accepted as true to the extent they are
contradicted by the record in the case.  <u>United States v. Quan</u>,

22

789 F.2d 711, 715 (9th Cir. 1986), <u>cert. denied</u>, 478 U.S. 1044
(1986); <u>Shraiar v. United States</u>, 736 F.2d 817, 818 (1st Cir.
1984). In addition, no hearing is required where the movant's
allegations, when viewed against the records, either fail to
state a claim for relief or are so palpably incredible as to
warrant summary dismissal. <u>Shah v. United States</u>, 878 F.2d 1156,
1158 (9th Cir. 1989), <u>cert. denied</u>, 493 U.S. 869 (1989);
<u>Shaflander</u>, 743 F.2d at 717; <u>Quan</u> 789 F.2d at 715.

In the instant case, the United States submits that an
evidentiary hearing is not required because Cacho has failed to
make any true and specific factual allegations and because the
files and records of the instant case conclusively show that
Cacho is not entitled to relief. In addition, Cacho's
allegations consist of mere conclusory statements that fail to
state a claim for relief.

IV. <u>CONCLUSION</u>

In the instant case, Cacho has failed to make a <u>prima
facie</u> case for any of his § 2255 claims. In addition, he has not
articulated how counsels' performance was deficient and how
counsels' alleged deficient representation prejudiced him. The
allegations in Cacho's § 2255 motion do not state a claim upon

//

//

//

23

which relief can be granted.  For the foregoing reasons, the United States requests that Cacho's § 2255 motion be denied in its entirety.

DATED: February 1, 2008, at Honolulu, Hawaii.

EDWARD H. KUBO, JR
United States Attorney
District of Hawaii


By /s/ Thomas Muehleck
   THOMAS MUEHLECK
   Assistant U. S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

24

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing document was served on the following at his last known address:

Served by First Class Mail:

Mr. Jesus Cacho
93666-198
CI Taft
Correctional Institution
P.O. Box 7001
Taft, CA 93268

DATED: February 1, 2008, at Honolulu, Hawaii.

/s/ Rowena Kang