1

```
1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3
   UNITED STATES OF AMERICA,        ) CR 05-00164 JMS
4                                   )
              Plaintiff,            ) Honolulu, Hawaii
5                                   ) December 5, 2005
         vs.                        ) 11:00 a.m.
6                                   )
   (02) JESUS CACHO,                ) Motion for Withdrawal
7                                   ) of Not Guilty Plea and
              Defendant.            ) to Plead Anew
8  _____)

9                    TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
10                UNITED STATES DISTRICT JUDGE

11 APPEARANCES:
   For the Plaintiff:      THOMAS MUEHLECK, ESQ.
12                         Office of the United States Attorney
                           PJKK Federal Building
13                         300 Ala Moana Blvd., Suite 6100
                           Honolulu, Hawaii  96850
14
   For the Defendant (02): DAVID A. ELDEN, ESQ.
15                         11377 West Olympic Blvd., 10th Floor
                           Los Angeles, California  90064
16                              - and -
                           WILLIAM M. DOMINGO, ESQ.
17                         568 Halekauwila St., 2nd Floor
                           Honolulu, Hawaii  96813
18
   Official Court Reporter: Sharon Ross, CSR, RPR, CRR
19                         United States District Court
                           300 Ala Moana Blvd., Room C-283
20                         Honolulu, Hawaii  96850
                           (808) 535-9200
21

22

23

24

25 Proceedings recorded by machine shorthand, transcript produced
   with computer-aided transcription (CAT).
```


EXHIBIT A

| | | |
|---|---|---|
| | 1 | MONDAY, DECEMBER 5, 2005                    11:08 A.M. |
| | 2 | COURTROOM MANAGER:  Criminal No. 05-00164 JMS, United |
| | 3 | States of America versus Defendant (02), Jesus Cacho. |
| | 4 | This case is called for a hearing on a motion for |
| 11:08AM | 5 | withdrawal of not guilty plea and to plead anew. |
| | 6 | MR. MUEHLECK:  Tom Muehleck for the United States. |
| | 7 | Good morning, Your Honor. |
| | 8 | MR. ELDEN:  David Elden, Your Honor, for Mr. Cacho. |
| | 9 | Mr. Cacho is present aided by a Spanish-speaking interpreter; |
| 11:08AM | 10 | and my local counsel, Mr. Domingo, is also present. |
| | 11 | THE COURT:  Okay.  Good morning.  All right.  If you |
| | 12 | could approach then with your client, sir. |
| | 13 | MR. MUEHLECK:  Your Honor, Mr. Rudow is here.  I've |
| | 14 | had him running around doing things getting ready for trial. |
| 11:09AM | 15 | He's not in proper court attire, but I sprung this on him.  May |
| | 16 | I have him sit at counsel table with me? |
| | 17 | THE COURT:  Yes, you may. |
| | 18 | MR. MUEHLECK:  Thank you.  Thank you, Your Honor. |
| | 19 | THE COURT:  If we can get the microphone there for the |
| 11:09AM | 20 | interpreter.  There we go.  Thank you, Mr. Domingo. |
| | 21 | Okay.  Mr. Cacho, I understand that you wish to enter |
| | 22 | a plea of guilty without a plea agreement to the two-count |
| | 23 | indictment against you; is that right? |
| | 24 | THE DEFENDANT:  Yes, that is. |
| 11:09AM | 25 | THE COURT:  Now, before I can accept your guilty plea, |

1    there are a number of questions I need to ask you.  I need to

2    make sure that your plea is valid and voluntary, that you

3    understand what rights you're giving up and that you are, in

4    fact, guilty of the two counts in the indictment.

11:10AM    5         If you don't understand my questions at any time,

6    please simply ask and I will repeat the question.

7              THE DEFENDANT:  Yes, I understand.

8              THE COURT:  All right.  Could we please swear the

9    defendant?

11:10AM    10            COURTROOM MANAGER:  Yes, Your Honor.

11          (The defendant was sworn to answer truthfully.)

12            THE DEFENDANT:  Yes, I swear.

13            THE COURT:  All right.  Does someone have an extra

14    copy of the indictment?  I didn't bring a copy with me.

11:10AM    15            MR. ELDEN:  May I approach the bench, Your Honor?

16            MR. MUEHLECK:  Here it is right here.

17            THE COURT:  Okay.

18            MR. ELDEN:  He's faster than I am, Your Honor.

19            I would also indicate, I think, for the record, Your

11:10AM    20    Honor, that Mr. Cacho speaks English.  I can communicate with

21    him.  I do have sometimes some difficulty communicating, and I

22    think for the -- it's better that he has an interpreter.  So, I

23    just want the Court to know that he does understand English to

24    some extent.

11:10AM    25            THE COURT:  All right.  Very well.  Thank you.

4

|  | 1 | Mr. Cacho, can you give us your full legal name, |
|--|---|---|
|  | 2 | please? |
|  | 3 | THE DEFENDANT:  Jesus Antonio Cacho. |
|  | 4 | THE COURT:  And how old are you, sir? |
| 11:11AM | 5 | THE DEFENDANT:  34 years old. |
|  | 6 | THE COURT:  How far did you go in school? |
|  | 7 | THE DEFENDANT:  I got -- I got my licensing in |
|  | 8 | informatic. |
|  | 9 | THE COURT:  Okay.  And how far is that?  How many |
| 11:11AM | 10 | years of school is that? |
|  | 11 | THE DEFENDANT:  Four-and-a-half years -- |
|  | 12 | four-and-a-half years of college. |
|  | 13 | THE COURT:  All right.  Now, I understand you speak |
|  | 14 | some English; is that correct? |
| 11:11AM | 15 | THE DEFENDANT:  Yes, that's correct. |
|  | 16 | THE COURT:  Have you read the superseding indictment |
|  | 17 | in English in this case or have you had it interpreted into |
|  | 18 | Spanish or both? |
|  | 19 | THE DEFENDANT:  Yes, I read it. |
| 11:11AM | 20 | THE COURT:  In English you've read it? |
|  | 21 | THE DEFENDANT:  Yes, in English. |
|  | 22 | THE COURT:  Did anyone interpret it into Spanish for |
|  | 23 | you? |
|  | 24 | THE DEFENDANT:  Yes. |
| 11:11AM | 25 | THE COURT:  All right.  Do you understand the charges |

1    against you in the superseding indictment?

2           THE DEFENDANT:  Yes, I understand them.

3           THE COURT:  Now, have you taken any drugs or had any

4    alcohol in the last 24 hours?

11:12AM    5           THE DEFENDANT:  No.

6           THE COURT:  Have you been treated at any point in time

7    for any mental illness or an addiction to drugs or alcohol?

8           THE DEFENDANT:  No.

9           THE COURT:  Can you tell me in your own words why

11:12AM    10    you're in court today?

11           THE DEFENDANT:  To plead guilty for transportation of

12    more than 50 grams of methamphetamine.

13           THE COURT:  All right.  Have you had enough time to

14    talk with your attorneys about your case and your decision to

11:12AM    15    plead guilty?

16           THE DEFENDANT:  Yes, I've had.

17           THE COURT:  Are you satisfied with your attorneys'

18    representation of you?

19           THE DEFENDANT:  Yes, I'm satisfied.

11:12AM    20           THE COURT:  Has anyone made any promise or assurance

21    to you of any kind in an effort to get you to plead guilty?

22           THE DEFENDANT:  No.

23           THE COURT:  Has anyone threatened you or anyone else

24    or forced you in any way to plead guilty?

11:13AM    25           THE DEFENDANT:  No.

1    THE COURT:  Are you pleading guilty of your own free

2 will because you are guilty and because it's your own choice?

3    THE DEFENDANT:  Yes, it is.

4    THE COURT:  Let me ask counsel if you have any reason

11:13AM 5 to doubt your client's competence to enter a valid and

6 voluntary plea here today.

7    MR. ELDEN:  I have no doubt.

8    THE COURT:  All right.  Have you then discussed the

9 two charges against you in the superseding indictment with your

11:13AM 10 attorney?

11    THE DEFENDANT:  Yes.

12    THE COURT:  Okay.  I want to go over those two counts

13 with you now.

14    Do you understand that Count 1 charges from a date

11:13AM 15 unknown, but at least on or about March 12th, 2005, up to on or

16 about April 26th of 2005, you, along with Mr. Gonzalez-Guerrero

17 and Jesika Cacho, did conspire with each other and other

18 persons unknown to the Grand Jury to knowingly and

19 intentionally distribute and possess with intent to distribute

11:14AM 20 a quantity of methamphetamine, its salts, isomers and salts of

21 its isomers, in excess of 50 grams?  And then it goes on to say

22 it's about six pounds of methamphetamine.  Do you understand

23 that charge?

24    THE DEFENDANT:  Yes.

11:14AM 25    THE COURT:  And have you read the overt acts set forth

1    on Pages 2, 3 and 4 of this indictment?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And do you understand that Count 2 on

4    Page 4 charges that on or about April 7th of this year you and

11:14AM    5    Mr. Gonzalez-Guerrero, aiding and abetting each other, did

6    knowingly and intentionally possess with the intent to

7    distribute a quantity of methamphetamine in excess of 50 grams?

8    And this time it says approximately two pounds of

9    methamphetamine.  Do you understand that charge?

11:14AM    10            THE DEFENDANT:  Yes.

11            THE COURT:  Mr. Muehleck, could you put the maximum

12    penalties that apply to both of these counts on the record,

13    please?

14            MR. MUEHLECK:  Yes, the maximum penalties, Your Honor,

11:15AM    15    would be up to life imprisonment and a fine of up to

16    $4 million, plus a term of supervised release of not less than

17    five years and up to life and a mandatory minimum term of

18    imprisonment of ten years -- that's as to both counts -- and a

19    $100 special assessment as to both counts, Your Honor.

11:15AM    20            THE COURT:  All right.  Do you understand, sir, then

21    that the maximum imprisonment you could receive for these

22    charges is up to life?

23            THE DEFENDANT:  Yes, I understand.

24            THE COURT:  And a fine of up to $8 million?

11:15AM    25            THE DEFENDANT:  I understand.

1          THE COURT:  And a mandatory term of incarceration of

2    ten years?

3          THE DEFENDANT:  I understand.

4          THE COURT:  And a period of supervised release of at

11:15AM    5    least five years -- that's mandatory -- and up to life?

6          THE DEFENDANT:  I understand.

7          THE COURT:  And a special assessment of $200?

8          THE DEFENDANT:  I understand.

9          THE COURT:  All right.  I'm assuming everyone agrees

11:15AM   10    with those penalties as stated by Mr. Muehleck; is that right?

11          MR. ELDEN:  That's correct.

12          THE COURT:  Okay.  All right.  Now, I want to go over

13    with you some rights you'll be giving up by entering a plea of

14    guilty today.

11:16AM   15          Do you understand under the Constitution and laws of

16    the United States you have a right to persist in your plea of

17    not guilty and you are entitled to a trial by jury on the

18    charges against you?

19          THE DEFENDANT:  I understand.

11:16AM   20          THE COURT:  And that at a trial you would be presumed

21    innocent and the government would have the burden of presenting

22    you -- of presenting evidence to prove your guilt beyond a

23    reasonable doubt to 12 jurors and they would have to be

24    unanimous as to your guilt?

11:16AM   25          THE DEFENDANT:  I understand.

|  | 1 | THE COURT:  And at no time would you have to prove |
|--|---|---|

1    THE COURT:  And at no time would you have to prove

2    that you were not guilty.  The burden is always on the

3    government to prove that, in fact, you are guilty.  Do you

4    understand that?

11:16AM    5    THE DEFENDANT:  I understand it.

6    THE COURT:  And that at all stages of the prosecution,

7    including a trial, you have the right to assistance of counsel;

8    and if you could not afford a lawyer, one would be appointed

9    free of charge.

11:17AM    10    THE DEFENDANT:  I understand.

11    THE COURT:  Do you also understand that at a trial you

12    would have the right to see and hear all the government

13    witnesses and have them questioned or cross-examined by your

14    attorney?

11:17AM    15    THE DEFENDANT:  I understand it.

16    THE COURT:  And you could object to evidence offered

17    by the government and you could offer evidence on your own

18    behalf and you could compel or force witnesses to appear in

19    court to testify using the court's subpoena power.  Do you

11:17AM    20    understand that?

21    THE DEFENDANT:  I understand.

22    THE COURT:  Do you also understand that you have a

23    right to testify, if you choose to do so, at trial; but you

24    also have a right not to testify and that no inference or

11:17AM    25    suggestion of guilt can be drawn from the fact that you did not

1    testify?

2              THE DEFENDANT:  I understand.

3              THE COURT:  And do you understand also that by

4    entering a plea of guilty, if I accept your plea, there will be

11:18AM  5    no trial; and you will have given up or waived all of the

6    rights that we just discussed?

7              THE DEFENDANT:  I understand.

8              THE COURT:  And finally do you understand that you

9    will have to waive or give up your right not to incriminate

11:18AM  10   yourself if you wish to plead guilty because I will ask you

11   questions about what makes you guilty of the crimes charged?

12             THE DEFENDANT:  I understand.

13             THE COURT:  Okay.  Sir, are you a United States

14   citizen?

11:18AM  15            THE DEFENDANT:  No, I'm a resident.

16             THE COURT:  You are a resident but not a citizen?

17             MR. MUEHLECK:  It's resident alien, I believe, Your

18   Honor.

19             THE COURT:  All right.  I don't know what impact this

11:18AM  20   conviction may have on your status in the United States, but do

21   you understand that you could be deported as a result of your

22   conviction?

23             THE DEFENDANT:  I understand it.

24             THE COURT:  Do you also understand that the offense to

11:19AM  25   which you are pleading guilty is a felony offense and that if

1    your plea is accepted and you are adjudged guilty of that

2    offense, you may be deprived of valuable civil rights?  And

3    that includes the right to possess any kind of firearm or

4    ammunition.  Do you understand that?

11:19AM    5            THE DEFENDANT:  I understand it.

6            THE COURT:  I'm assuming he does not have the right to

7    vote or hold public office; is that correct?

8            MR. MUEHLECK:  I believe that's correct.

9            MR. ELDEN:  (Counsel nods head.)

11:19AM    10            THE COURT:  All right.  Now, are there currently any

11    pending state charges or are you on probation or parole from

12    any state charges?

13            THE DEFENDANT:  No, no problem.

14            THE COURT:  All right.  I want to go over with you now

11:19AM    15    some issues related to sentencing.  Some issues relating to

16    sentencing I want to discuss with you now.

17            United States law establishes sentencing guidelines

18    for people convicted here in Federal Court.  The sentencing

19    judge -- that is myself -- must consider those guidelines, but

11:20AM    20    they're not binding on me.  I must also consider several other

21    factors set forth in a law at 18 United States Code Section

22    3553(a).

23            Have you and your attorney discussed these sentencing

24    guidelines and other sentencing factors?

11:20AM    25            THE DEFENDANT:  Yes.

|  |  |  |
|---|---|---|
|  | 1 | THE COURT:  And do you understand that the court will |
|  | 2 | not be able to determine the guidelines for your case until |
|  | 3 | after a presentence report has been completed and you and the |
|  | 4 | government have an opportunity to review that report and make |
| 11:20AM | 5 | any objections to what's contained in the report? |
|  | 6 | THE DEFENDANT:  I understand it. |
|  | 7 | THE COURT:  Do you also understand that after I |
|  | 8 | determine what guidelines apply to your case, I will consider |
|  | 9 | those guidelines and the other sentencing factors and that I |
| 11:20AM | 10 | may impose a sentence that is less severe or more severe than |
|  | 11 | called for by the guidelines? |
|  | 12 | THE DEFENDANT:  I understand it. |
|  | 13 | THE COURT:  And do you understand that if I impose a |
|  | 14 | sentence more severe than the guidelines call for or more |
| 11:21AM | 15 | severe than what you had hoped or expected to receive, you will |
|  | 16 | still be bound by your plea and you will not be able to |
|  | 17 | withdraw that plea of guilty? |
|  | 18 | THE DEFENDANT:  I understand it. |
|  | 19 | THE COURT:  And do you understand that both you and |
| 11:21AM | 20 | the government have the right to appeal your sentence to the |
|  | 21 | Ninth Circuit Court of Appeals? |
|  | 22 | THE DEFENDANT:  I understand. |
|  | 23 | THE COURT:  Now, has anyone promised to you as to what |
|  | 24 | your sentence will be? |
| 11:21AM | 25 | THE DEFENDANT:  No, nobody. |

1          THE COURT:  Do you understand that if you are

2    sentenced to prison, a term of supervised release will follow

3    and that you can be given additional time in prison if you

4    violate conditions of supervised release?

11:22AM    5          THE DEFENDANT:  I understand it.

6          THE COURT:  And, also, do you understand that parole

7    has been abolished in the federal system here in the United

8    States and that if you are sentenced to a term of imprisonment,

9    you will not be released early on parole?

11:22AM   10          THE DEFENDANT:  I understand.

11          THE COURT:  Mr. Muehleck, is either restitution or

12    forfeiture applicable in this case?

13          MR. MUEHLECK:  Not that I'm aware of, Your Honor, no.

14          THE COURT:  Okay.  Now, I need to make sure that you,

11:22AM   15    in fact, committed the two crimes to which you are prepared to

16    plead guilty.

17          Mr. Muehleck, can you give us, first, the elements of

18    the offense for both statutes?  And then we'll move on to

19    the (inaudible).

11:22AM   20          MR. MUEHLECK:  Excuse me.  As to Count 1, the elements

21    would be that the defendant voluntarily and intentionally

22    entered into an agreement to break the law and that that

23    agreement was -- or that law was to possess with intent to

24    distribute and to distribute 50 or more grams of

11:22AM   25    methamphetamine, its salts, isomers and salts of its isomers,

1    in this case approximately five pounds of methamphetamine --

2    excuse me -- six pounds of methamphetamine, its salts, isomers

3    and salts of its isomers, and that the defendant intended that

4    the actual distribution -- that is, the object crime -- the

11:23AM    5    actual distribution of possession with intent to distribute of

6    50 grams or more of methamphetamine, its salts, isomers and

7    salts of its isomers, in this case approximately six pounds of

8    methamphetamine, actually take place.

9        As to Count 2, United States would have to show that

11:23AM    10    the defendant intended to possess or did knowingly

11    intentionally possess with intent to distribute or aid and abet

12    another person with the possession with intent to distribute a

13    quantity of methamphetamine, its salts, isomers and salts of

14    its isomers, in excess of 50 grams, in this case, approximately

11:23AM    15    two pounds of methamphetamine, its salts, isomers and salts of

16    its isomers.  That is, the defendant possessed it and had

17    dominion and control over it and intended to distribute it or

18    aid and abet another person who intended to distribute it.

19        THE COURT:  All right.  Do you agree with those

11:24AM    20    elements as stated by Mr. Muehleck?

21        MR. ELDEN:  Yes, I do, Your Honor.

22        THE COURT:  All right.  All right.  Mr. Muehleck,

23    could you then give a proffer as to the facts that the

24    government would be prepared to present as to both Counts 1 and

11:24AM    25    Counts 2?

1        MR. MUEHLECK:  Excuse me.  If the United States went

2    to trial, it would show that from a date uncertain, but at

3    least from on or about March 12th, 2005, to on or about

4    April 26th, 2005, in the District of Hawaii and elsewhere and,

11:24AM    5    in particular, in the District of California, the defendant

6    conspired -- that is, he agreed with other persons charged

7    here, with Alejandro Gonzalez-Guerrero, also known as Alex,

8    Jesika Cacho and other -- with other persons unknown to the

9    Grand Jury -- to knowingly and intentionally distribute and

11:24AM    10    possess with intent to distribute more than 50 grams of

11    methamphetamine.

12        United States would show that the defendant met with

13    an undercover FBI agent, in this case Agent Rudow, on or about

14    April 7th after speaking with him on April 6th of this year;

11:25AM    15    and that introduction had been arranged by Alex that's been

16    identified as Alejandro Gonzalez-Guerrero.

17        The purpose of that meeting was for the defendant to

18    provide a quantity of methamphetamine, approximately two

19    pounds, to Agent Rudow for transport back to Hawaii and

11:25AM    20    distribution on the Island of Maui.

21        United States would show that Agent Rudow, on

22    March 12th, March 20th, March 28th, April 6th of this year, had

23    conversations with Alex, Alejandro Gonzalez-Guerrero, talking

24    about Alex' ability to distribute or provide large quantities

11:26AM    25    of methamphetamine, or approximately five or six pounds total;

1    that the defendant spoke with Agent Rudow, who posed as a Maui

2    drug dealer; that he met with Agent Rudow at Alex' request,

3    provided a quantity of methamphetamine in a mall area at Santa

4    Ana in the defendant's VW SUV.

11:26AM    5        That methamphetamine was seized and then transported

6    to the DEA laboratory in Vista, California.  It was analyzed

7    and found to be 895.3 grams net weight of 99 percent pure -- a

8    substance that was found to be 99 percent pure

9    d-methamphetamine hydrochloride; that subsequent to that

11:27AM    10    meeting on April 7th in Santa Ana, California in a mall, the

11    defendant engaged in conversation over the telephone with Agent

12    Rudow in his undercover capacity on several occasions.

13        On April 7th, again, on April 25th, on April 13th, on

14    April 26th, Agent Rudow also talked to Alex on those occasions.

11:27AM    15    On April 6th, April 7th, April 8th, April 17th, April 13th, the

16    defendant was overheard speaking on a cell phone with an

17    individual by the name of Viejo.

18        Subsequent to the defendant's arrest on April 26th,

19    there had been plans and discussions with the defendant and

11:27AM    20    Alex to provide another four or five pounds of methamphetamine

21    for distribution to the undercover agent for transportation and

22    distribution in Hawaii.

23        At the time of the defendant's arrest, he was advised

24    of his Miranda rights, gave a statement that he was involved on

11:28AM    25    two occasions in the distribution of methamphetamine for an

1    individual by the name of Trick, also known as Viejo, a Mexican

2    national gentleman, and that he had provided the

3    methamphetamine or carried it to Santa Ana at Trick's, Viejo's,

4    request and turned it over to Agent Rudow and was to be paid

11:28AM    5    $1,000 for that.

6        On April 26th, 2005, a search warrant was executed at

7    the defendant's residence at 465 Jamul Court in Chula Vista,

8    California, a residence the defendant shared with his wife,

9    Jesika.  Found in three separate rooms, two bedrooms and a

11:28AM    10    garage, was a quantity of methamphetamine that was seized,

11    subsequently sent to the Vista, California laboratory, the

12    southwest regional laboratory of DEA.

13        And those three samples were tested and a composite --

14    those three drug compounds were tested -- were made into a

11:29AM    15    composite sample.  And the total weight of those three

16    compounds was 492.2 grams net weight.  The composite sample

17    made up of those three compounds was tested and found to be 99

18    percent pure d-methamphetamine hydrochloride.

19        Two scales were found in the defendant's residence and

11:29AM    20    a number of different pieces of paper indicating drug notes or

21    drug notations or records on those papers.  And a large

22    quantity of Ziploc baggies in a duffle bag in the garage was

23    found.

24        In the residence the methamphetamine was found in the

11:30AM    25    garage, a small amount, another small amount in a cigarette --

1    Marlboro cigarette pack in the master bedroom, I believe, on a

2    shelf in the closet and a quantity of methamphetamine found in

3    a plastic bag inside a paper bag underneath a pair of jeans in

4    a laundry basket in a separate bedroom.

11:30AM    5    Cell phone records indicate the names Alex and Viejo

6    on both the defendant's cell phones and Jesika Cacho's cell

7    phones.

8    Alex remains a fugitive, Your Honor.  That generally

9    would be the evidence if we went to trial.

11:30AM    10    THE COURT:  All right.  Mr. Cacho, did you understand

11    everything that Mr. Muehleck just stated?

12    THE DEFENDANT:  Yes, I understood.

13    THE COURT:  And is everything that he stated to which

14    you have personal knowledge true and accurate in every respect?

11:31AM    15    MR. ELDEN:  Need one moment to talk to him.

16    (The Defendant and Mr. Elden confer.)

17    MR. ELDEN:  Your Honor, he's unaware -- the only -- we

18    agree with everything that the prosecutor has said.  The only

19    thing that -- he is unaware of any cell phone that Jesika had

11:31AM    20    that would have had Viejo or Trick's phone number in it.  He's

21    unaware of that.  And, also, I think for -- the record should

22    indicate, Your Honor, that, to his knowledge, his wife is not

23    involved in this conspiracy that he was involved in.

24    THE COURT:  All right.  Well, that raises a whole

11:31AM    25    other issue that I think I need to address first before we get

1    to the factual basis.

2    Mr. Cacho, it was stated in a hearing earlier in this

3    court today that you intend to testify on behalf of your wife

4    at her trial that starts tomorrow.  And I just want to make

11:31AM    5    sure that you aren't pleading guilty for the purpose of helping

6    your wife, that is, that it's not your own choice, your

7    voluntary choice, to plead guilty but, in fact, you're pleading

8    guilty for a reason other than one which would prove to me that

9    it's your own choice.  Do you understand?

11:32AM    10    THE DEFENDANT:  That's it, yes.

11    THE COURT:  All right.

12    THE DEFENDANT:  Yes, I understand.

13    MR. ELDEN:  Your Honor, I didn't understand.

14    THE COURT:  Yeah.

11:32AM    15    MR. ELDEN:  He's -- if the Court could just make it

16    clear, when he was arrested, from the beginning we were trying

17    to negotiate with the government to cooperate.  He is pleading

18    guilty because, in fact, he is guilty, irrespective of his wife

19    being charged or whatnot.  I might have even contacted the

11:32AM    20    government prior to the superseding indictment.  I don't have

21    my notes but -- regarding cooperation, Your Honor.  So, one has

22    nothing to do with the other.

23    THE COURT:  All right.  So, that's the point I'm

24    asking.  Is -- is that accurate that your decision to testify

11:32AM    25    is unrelated -- for your wife is unrelated to your decision to

1    plead guilty?

2            THE DEFENDANT:  Yes.

3            THE COURT:  All right.  And you're pleading guilty

4    only because it's your own free will and you're doing it

11:33AM    5    independent of a concern of your wife?

6            THE DEFENDANT:  My own will.

7            THE COURT:  All right.  So --

8            MR. MUEHLECK:  And other than what Mr. Elden

9    corrected, did he agree with the facts --

11:33AM    10            THE COURT:  No, no, I'm getting to that now,

11    Mr. Muehleck.

12            MR. MUEHLECK:  Thank you.

13            THE COURT:  Yeah.  Now, your attorney just made some

14    statements earlier about some facts that you're unaware

11:33AM    15    relating to your wife's cell phone bills, I believe.  Was there

16    anything else, Mr. Elden, or is that all?

17            MR. MUEHLECK:  Cell phone directory information.

18            THE COURT:  Cell phone directory information.  All

19    right.

11:33AM    20            MR. MUEHLECK:  Information from the cell phone.

21            THE COURT:  Okay.

22            MR. ELDEN:  That is all that I right now can

23    independently recollect except as to indicate, I think, Count 1

24    she's involved -- or charged as being involved.  And he never

11:33AM    25    conspired with her.

THE COURT:  All right.  Well, I didn't say -- I'm only

asking if, based on what Mr. Muehleck said, Mr. Cacho, do you

agree that everything he said is true and correct,

understanding that you did not have information regarding what

11:34AM  was in your wife's cell phone directory?  Other than that piece

of information, is everything Mr. Muehleck said true and

correct?

THE DEFENDANT:  Yes.

THE COURT:  All right.  So, prior to April 7th of

11:34AM  2005, did you have discussions with a person you knew as Alex?

MR. ELDEN:  I've explained to the prosecutor, Your

Honor, my understanding is there were discussions with Alex as

part of the conspiracy with the agent.  My client was contacted

by a person named Tricks, which the government is aware of, who

11:34AM  arranged him to make the delivery pursuant to the conversation

that the government had with Alex is a more correct way of

saying it.  I don't think that my client ever had a direct

conversation with Alex.  I believe the evidence --

MR. MUEHLECK:  I think the defendant said he had one

11:34AM  conversation with Alex -- at the time of his arrest he admitted

that -- and had more conversations with Tricks, also known as

Viejo, and that's -- the delivery was made at the request of

Tricks or Viejo on April 7th of 2005.

MR. ELDEN:  I agree that that is what my client said

11:35AM  at the time he was arrested; but in my debriefing the client at

1    greater length, Your Honor, I think that the evidence will be

2    established, when he testifies, that Alex -- that he was told

3    by Tricks that Alex was right there at the time that they were

4    having this conversation but my client never had a direct

11:35AM  5    conversation with Alex.

6        THE COURT:  All right.  Let me ask it this way then.

7    Do you know a person that's been described here as Tricks, a

8    Mexican national?

9        THE DEFENDANT:  Yes, that's it.

11:35AM  10    THE COURT:  Okay.  And prior to April 7th of 2005, did

11    you have discussions with Tricks about the distribution of

12    methamphetamine?

13        MR. MUEHLECK:  Trick, Your Honor.

14        THE COURT:  Trick, singular.

11:36AM  15    THE DEFENDANT:  Yes, it is.

16        THE COURT:  All right.  And based on your conversation

17    with Trick on April 7th, 2005, did you obtain some

18    methamphetamine on or about that date?

19        THE DEFENDANT:  Yes, that's it.

11:36AM  20    THE COURT:  All right.  And what did you do with that

21    methamphetamine?

22        THE DEFENDANT:  I took it to Santa Ana, to the mall of

23    Santa Ana; and I gave it to the undercover agent.

24        THE COURT:  All right.  And did you know it was

11:36AM  25    methamphetamine that you were giving to him?

1          THE DEFENDANT:  I had an idea.  Yes.

2          THE COURT:  Did you think --

3          THE DEFENDANT:  Yes.

4          THE COURT:  -- it was some other drug?  Did you think

11:36AM  5   it was methamphetamine?  What were you thinking at the time?

6          THE DEFENDANT:  I knew it was that.

7          THE COURT:  You knew it was methamphetamine?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Mr. Muehleck, are you

11:37AM 10   satisfied with that as a proffer for both counts?

11          MR. MUEHLECK:  Yes, Your Honor, since he's admitted

12   the facts that I represented.

13          THE COURT:  All right.  All right.

14          MR. MUEHLECK:  Thank you.

11:37AM 15          THE COURT:  I don't see a need to go into what

16   happened at the home in the search warrant at this time because

17   I understand that will be the subject matter, I'm sure, in part

18   of the testimony.  And I don't see the need to go into that.

19   The question is whether he was part of the conspiracy.  He's

11:37AM 20   admitted to that.  And he's admitted to the substantive count,

21   that is, Count 2.

22          Mr. Elden, let me ask you:  Are you satisfied then

23   with that proffer and your client's statements?

24          MR. ELDEN:  Yes.

11:37AM 25          THE COURT:  All right.  All right.  Mr. Cacho, as to

1   Count 1 of the superseding indictment, how do you plead, guilty

2   or not guilty?

3           THE DEFENDANT:  Guilty.

4           THE COURT:  And as to Count 2 of the superseding

11:38AM   5   indictment, how do you plead, guilty or not guilty?

6           THE DEFENDANT:  Guilty.

7           THE COURT:  All right.  It is the finding of the Court

8   that Mr. Cacho's competent to understanding the proceedings and

9   to enter a knowing and informed plea, that he understands the

11:38AM  10   two charges to which he is pleading guilty, that he's entering

11   a knowing and voluntary plea and is not entering the plea

12   because of any force or threat or promise, that the plea of

13   guilty is supported by an independent basis in fact containing

14   each of the essential elements of the offense or both offenses,

11:38AM  15   that he knows his rights associated with a trial, that he

16   understands the sentencing guidelines and the other factors the

17   Court must consider when imposing sentence and the maximum

18   possible punishment and mandatory minimum.

19           And as you have acknowledged your guilt, Mr. Cacho, I

11:38AM  20   accept your guilty plea; and you now are adjudged guilty of

21   Counts 1 and 2 of the superseding indictment.

22           I'm referring you to the U.S. Probation Office for the

23   preparation of a presentence investigation report.  It's

24   important that you cooperate with them through that process,

11:39AM  25   and you certainly can talk to Mr. Elden about that process.

25

1             Can we get a sentencing date, please?

2             COURTROOM MANAGER:  Yes, Your Honor.  Monday, May 15,

3      2006 at 1:30.

4             MR. MUEHLECK:  15 May at 1:30.

11:39AM    5             COURTROOM MANAGER:  Yes.

6             THE COURT:  Is that agreeable with everybody?

7             MR. MUEHLECK:  Yes.

8             MR. ELDEN:  Thank you.

9             THE COURT:  Bail conditions will remain the same?  Is

11:39AM    10     there anything else to take up?

11             MR. MUEHLECK:  Nothing from the government.  Thank

12     you, Your Honor.

13             MR. ELDEN:  What -- does Probation -- will it contact

14     me about setting up the interview so I can make arrangements to

11:39AM    15     be here or have local counsel there?  I don't know what your

16     local --

17             THE COURT:  What I suggest you do is talk to

18     Mr. Domingo who certainly is familiar with that --

19             MR. DOMINGO:  Yes, Your Honor, I'll take care of it.

11:39AM    20             THE COURT:  -- and he can explain that process.

21             MR. ELDEN:  Not a problem.

22             THE COURT:  Okay?

23             MR. ELDEN:  Thank you very much, Your Honor.

24             THE COURT:  Thank you.

25             (Proceedings concluded at 11:40 a.m.)

```
1                      COURT REPORTER'S CERTIFICATE
2              I, Sharon Ross, Official Court Reporter, United
3    States District Court, District of Hawaii, do herby certify
4    that the foregoing is a correct transcript from the record of
5    proceedings in the above-entitled matter.
6              DATED at Honolulu, Hawaii, December 7, 2005.
7
8                              Sharon Ross
9                              SHARON ROSS
10                             CSR 432, RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```