IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JESUS CACHO, | ) | CR. NO. 05-000164-02 JMS |
| | ) | CIV. NO. 07-00404 JMS-LEK |
| Petitioner, | ) | |
| | ) | ORDER DENYING PETITIONER'S |
| vs. | ) | MOTION TO VACATE, SET ASIDE, |
| | ) | OR CORRECT A SENTENCE |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE

Petitioner Jesus Cacho ("Cacho") filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on July 24, 2007 and a memorandum in support of his motion on December 3, 2007.  In his motion and memorandum, Cacho raises the following claims: (1) his counsel was ineffective in failing to file a timely notice of appeal after conviction and in failing to object to venue in the District of Hawaii; (2) he did not understand the consequences and effects of the maximum penalty, including a potential fine, when he entered pleas of guilty; (3) his arrest was not based on probable cause, and the arresting officers did not provide him with his *Miranda* rights; and (4) the government failed to disclose grand jury transcripts and exculpatory evidence regarding an informant.

On February 1, 2008, the United States filed a response to the motion. On February 8, 2008, this court appointed Honolulu attorney Jeffrey Arakaki to represent Cacho. Cacho then filed a traverse to the government's response on February 27, 2008, and a supplemental traverse to the government's response on May 5, 2008. An evidentiary hearing was held on May 5 and 9, 2008.

For the following reasons, the Court DENIES the § 2255 motion.

## I. <u>BACKGROUND</u>[1]

### A.    The Offense Conduct

The following relevant facts were taken from the presentence investigation report: During March 2006, Alejandro Gonzalez-Guerrero ("Gonzalez-Guerrero") had numerous telephone calls with an undercover agent of the Federal Bureau of Investigation ("UC"). Gonzalez-Guerrero confirmed that he was willing to supply the UC with two pounds of methamphetamine, and that a courier would supply the drugs to the UC in Orange County, California on April 7, 2005. Later, Gonzalez-Guerrero identified the courier as "Cuco" (defendant Cacho) and provided Cacho's phone number to the UC. After discussing the arrangements, the UC and Cacho met at a mall in Santa Ana, California where

---

[1] The court sets forth only the background information relevant to a determination of the issues set forth in the § 2255 motion.

2

Cacho provided the UC with 895.3 grams of 99% pure d-methamphetamine hydrochloride.

Cacho then agreed to assist in further transactions, and told the UC that after the drugs were sold in Hawaii the UC should telephone Cacho who would then contact Gonzalez-Guerrero.[2]

The UC wire transferred $1,000 to Gonzalez-Guerrero on April 13, 2005. Cacho told the UC to wire an additional $1,500 and that Cacho would supply an additional four pounds of methamphetamine after the UC paid for the initial two pounds. Cacho telephoned the UC the next day to ask if he made "the deposit." Although Cacho was not clear on the specifics as to how payment would be made to Gonzalez-Guerrero, Cacho advised that he could take the UC to Mexico to deliver the proceeds or Cacho could deliver the proceeds to Gonzalez-Guerrero himself.

On April 19, 2005, Gonzalez-Guerrero instructed the UC to send $10,000 in proceeds to his sister. The UC telephoned Cacho the next day, and gave him a Federal Express tracking number to provide to Gonzalez-Guerrero. After further discussions regarding payment, Gonzalez-Guerrero told the UC that

---

[2] During the change of plea proceeding, Cacho stated that his contact with Gonzalez-Guerrero was through an individual known to him as "Trick."

Cacho would meet the UC to obtain the proceeds. Cacho agreed to meet the UC in Oceanside, California and told the UC that more methamphetamine was on its way. When Cacho met the UC for breakfast on April 26, 2005, he was arrested by law enforcement.

**B.     The Change of Plea Hearing and Sentencing**

On December 5, 2005, without a plea agreement, Cacho entered pleas of guilty to both counts of the Superseding Indictment charging him with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers (count 1) and aiding and abetting the possession with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers (count 2). Cacho was represented by his *pro hac vice* counsel, David A. Elden, and his local counsel, William M. Domingo.

During the change of plea proceeding, Cacho affirmed that he had received a copy of the Superseding Indictment, understood the charges, discussed the case and his decision to enter pleas of guilty with his counsel, and was satisfied with the representation provided by his counsel. The maximum penalties that applied to the charges were then explained to Cacho -- up to life imprisonment with a mandatory minimum term of incarceration of ten years, a fine of up to

4

$4,000,000, plus a term of supervised release of not less than five years and up to life. The court then asked Cacho if he understood that he could receive up to life imprisonment, that there was a mandatory minimum sentence of ten years, that there was a maximum fine of $8,000,000, and that he would be placed on supervised release for at least five years and up to life. In response to each question, Cacho stated that "I understand."

Cacho was sentenced by this court on August 7, 2006 to 108 months incarceration and a fine of $15,000. At the conclusion of sentencing, the court informed Cacho that he had a right to appeal from the sentence imposed, that he must file a notice of appeal within ten days of entry of judgment or he waives his right to appeal, that he has a right to assistance of counsel in pursuing an appeal, and that counsel would be appointed free of charge if he could not afford retained counsel. Cacho confirmed that he understood these rights.

///

///

///

///

////

///

C.    **The Evidentiary Hearing** [3]

Cacho testified that he could not recall if Elden and Domingo met with him after sentencing and discussed his appellate rights.  He did recall, however, instructing his wife, Jesika Cacho, within two to four days of sentencing to contact Elden and have his office file a notice of appeal.  Although Cacho testified on direct examination that he did not understand the consequences of the plea, he admitted on cross-examination that at the time he entered his plea he understood the mandatory minimum and maximum possible sentence.  Cacho further testified that he was not provided his *Miranda* rights after his arrest.  After

_____

[3] Although beyond the scope of Cacho's § 2255 motion, Cacho testified that he expected family members to cooperate with the government after his sentencing by helping to locate a fugitive in Mexico, with the hope of obtaining a Federal Rule of Criminal Procedure 35(b) motion and subsequent reduction in his sentence, but that Elden did not provide him with a meaningful opportunity to cooperate post-sentencing.  Even if Cacho had raised this matter in his § 2255 motion, Lillia Felix, Elden's paralegal, credibly testified that efforts were undertaken for Cacho's family members to cooperate, but these efforts were unsuccessful, at least in part due to infighting among Cacho family members.  Further, the United States Attorney's Office informed Elden in an April 20, 2006 letter that Cacho would not be entitled to a Rule 35(b) motion given the nature of the derivative cooperation he was offering.  Even if post-sentencing cooperation was considered a critical stage of the criminal proceeding to which the Sixth Amendment applies, *see United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003) (holding that defense counsel's failure to represent defendant during the presentence period in which defendant was attempting to cooperate with government could constitute ineffective assistance of counsel), Cacho has failed to show that Elden's representation was objectively deficient or that he was prejudiced.

being shown an executed *Miranda* waiver in Spanish, Cacho testified that in fact he did receive the *Miranda* warnings, but that he failed to read them.[4]

Jesika Cacho testified that within four to six days of sentencing and after having received instructions from Cacho, she called Lillia Felix, Elden's paralegal, and instructed her to file a notice of appeal. According to Jesika Cacho, Felix stated that there was nothing to appeal because Cacho had entered a plea of guilty rather than proceeding to trial.[5]

William Domingo, Cacho's local counsel, credibly testified that after the August 7, 2006 sentencing, he met with Cacho and Elden in the court's cellblock. Cacho expressed satisfaction because the court ruled that he was entitled to the "safety valve" under the United States Sentencing Guidelines and thus was not subject to the 120 month mandatory minimum. Further, after a discussion regarding Cacho's right to appeal from the sentence, Cacho indicated that he did not want to file an appeal.

---

[4] Cacho also explained that, contrary to what he said under oath during the change of plea proceeding, he entered his pleas of guilty so that he could testify on behalf of his wife at her trial. Based on this admission, Cacho withdrew any claim in his § 2255 motion that Elden induced him to enter a plea of guilty.

[5] Jesika Cacho's phone records were admitted showing that she placed calls to Felix within ten days of Cacho's sentencing. She admitted, however, that she was also having conversations with Felix regarding potential cooperation and an unrelated issue relating to an insurance claim on a stolen vehicle.

Lillia Felix credibly testified that neither Cacho nor Jesika Cacho spoke to Felix regarding any interest in pursuing an appeal. Felix explained that had such a request been made, she would have spoken to Elden and the office would thereafter file a notice of appeal.[6]

## II. <u>STANDARD OF REVIEW</u>

The court's review of Cacho's motion is governed by 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In the Ninth Circuit, this standard requires an evidentiary hearing where "the movant has made specific factual

---

[6] Elden testified that although he discussed Cacho's appellate rights with him after sentencing, Cacho did not request him to pursue an appeal. Elden, however, did not retain a clear recollection of the details of this conversation.

allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). "Thus, the district court's decision that [petitioner's] ineffective assistance claim did not warrant an evidentiary hearing was correct if his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (*citing Schaflander*, 743 F.2d at 717) (internal quotation signals omitted). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993). Given the allegations made in this case, the court appointed counsel and ordered an evidentiary hearing.

### III.  ANALYSIS

Cacho claims that he is entitled to relief because: (1) his counsel was ineffective in failing to file a timely notice of appeal after conviction and in failing to object to venue in the District of Hawaii; (2) he did not understand the consequences and effects of the maximum penalty, including a potential fine, when he entered pleas of guilty; (3) his arrest was not based on probable cause, and the arresting officers did not provide him with his *Miranda* rights; and (4) the

government failed to disclose grand jury transcripts and exculpatory evidence regarding an informant.   The court addresses each in turn.

### A.    Ineffective Assistance of Counsel

#### 1.    *Legal Framework*

The Sixth Amendment guarantees the right to the effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *United States v. Gonzalez*, 113 F.3d 1026, 1028 (9th Cir. 1997).  To demonstrate ineffective assistance of counsel, a petitioner must demonstrate:  (1) that his counsel's performance was objectively deficient and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  Even if counsel's performance was deficient, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Where a defendant instructs counsel to file an appeal, and the counsel fails to do so, that representation is *per se* ineffective.  *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005).  "At the other end of the spectrum, a

10

defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

###   2.    Counsel Was not Ineffective in Failing to File a Notice of Appeal

The court first finds that Domingo and Elden met with Cacho after sentencing in the cellblock area of the courthouse. After discussing his right to appeal, Cacho indicated that he did not wish to pursue an appeal. Domingo's testimony in this regard was credible and consistent with Cacho's own testimony that he was satisfied with his sentence.

Cacho appears to argue, however, that even if he initially indicated that he did not want to pursue an appeal, Jesika Cacho later informed Felix that Cacho wanted Elden to file a notice of appeal. The court, however, credits Felix's testimony that Jesika Cacho never discussed this matter with her. Felix explained, in a very credible manner, that had Jesika Cacho relayed this information to her, she would have spoken to Elden and the office would have filed a notice of appeal. In short, the court finds that after his sentencing Cacho specifically indicated that he did not want to pursue an appeal and no contrary information was relayed to Elden, Domingo, or Felix. Cacho's argument is thus foreclosed by *Flores-Ortega*, 528 U.S. at 477 ("[A] defendant who explicitly tells his attorney

11

*not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.").

> **3.    Counsel Was not Ineffective in Failing to Challenge Venue**

Cacho argues that because all of overt acts leading to his arrest occurred in California, and because the declared intention of the UC to transport the drugs to Hawaii is insufficient to confer venue on the District of Hawaii, his counsel's failure to challenge venue in the District of Hawaii fell below objective standards of reasonableness.  The government argues that venue is proper for the conspiracy count in the District of Hawaii because the UC placed telephone calls from Hawaii and those calls were in furtherance of the conspiracy.  The government also argues that venue is proper in the District of Hawaii for the aiding and abetting count because both Cacho and Gonzalez-Guerrero engaged in numerous telephone calls with the UC in Hawaii concerning the methamphetamine transaction.  The court need not reach the government's arguments, however, because Cacho could not have prevailed on a pretrial motion challenging venue under Ninth Circuit law.

In a pretrial motion challenging venue, courts may only consider evidence appearing on the face of the indictment; that is, the court may not receive evidence but must "presume the truth of the allegations in the charging

instruments." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996); *see also United States v. Mendoza*, 108 F.3d 1155 (9th Cir. 1997). Although it is clear from the Superseding Indictment that some activity took place in California, both counts charge that the illegal activity took place "in the District of Hawaii and elsewhere." These facts, if true, are sufficient to establish venue in the District of Hawaii. *Jensen*, 93 F.3d at 669. Counsel's failure to challenge venue under these circumstances was not objectively deficient. Put another way, even had Cacho filed motion to dismiss or transfer based on improper venue, he would not have prevailed under *Jensen*.[7]

## B.    Cacho's Understanding of the Consequences of the Plea

Cacho claims in a rather conclusory fashion that he was not given the opportunity to clearly understand the "consequences and effects" of the maximum penalties, including the fine imposed. Despite this claim, during the change of plea proceeding, while under oath, Cacho affirmed that he had received a copy of the Superseding Indictment, understood the charges, discussed the case and his decision to enter pleas of guilty with his counsel, and was satisfied with the

---

[7] Venue, of course, could have been challenged at a trial. Cacho admits, however, that he made the decision to enter pleas of guilty so that he could testify at his wife's trial and that his counsel did not induce him in any way to enter a plea of guilty. In other words, Cacho never afforded his counsel an opportunity to challenge venue at trial.

representation provided by his counsel.  Most importantly, the maximum penalties

and the mandatory minimum sentence were explained to Cacho, and he confirmed

that he could receive up to life imprisonment, that there was a mandatory

minimum sentence of ten years, that there was a maximum fine of $8,000,000, and

that he would be placed on supervised release for at least five years and up to life.

Such declarations in court, under oath, carry a "strong presumption of verity."

*United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (citation omitted).

 Cacho's claims to the contrary, whether in his § 2255 motion or during his

testimony during the evidentiary hearing, are simply not credible.

**C.    Cacho's Arrest and *Miranda* Warnings**

            Cacho claims, again in a conclusory manner, that he was arrested

without probable cause and that he was not given his *Miranda* warnings.  Neither

claim has merit.

            Cacho waived these arguments by entering pleas of guilty.  A

defendant who voluntarily and intelligently enters a plea of guilty may not

subsequently seek § 2255 relief on the basis of constitutional violations alleged to

have occurred prior to the entry of his plea of guilty.  *United States v. Ruiz,* 536

U.S. 622, 628 (2002) ("When a defendant pleads guilty he or she, of course,

forgoes not only a fair trial, but also other accompanying constitutional

guarantees."); *Hudson v. Moran*, 760 F.2d 1027, 1029-30 (9th Cir. 1985) ("As a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea constitutional violations.").  Cacho's Fourth Amendment and *Miranda* claims are waived.

        In any event, it is clear that the agents lawfully arrested Cacho based on probable cause.  Gonzalez-Guerrero agreed to supply two pounds of methamphetamine to the UC, and arranged for a courier, later identified as Cacho, to deliver the drugs to the UC in Orange County, California on April 7, 2005.  On April 7, 2005, after discussing the arrangements, Cacho and the UC met at a mall in Santa Ana, California where Cacho provided the UC with 895.3 grams of 99% pure d-methamphetamine hydrochloride.  Cacho was not arrested at the time, and he agreed to continue to assist the UC in further drug transactions.  On April 26, 2005, after continuing to engage in drug-related conversations with the UC, Cacho was arrested.  Law enforcement clearly had probable cause to arrest Cacho based on the totality of the circumstances.  Having probable cause, a warrantless arrest is

authorized under the Fourth Amendment.  *United States v. Lopez*, 482 F.3d 1067,

1072 (9th Cir. 2007).[8]

**D.     Grand Jury Transcripts and Exculpatory Evidence**

Cacho claims that the government never permitted him to review the

grand jury transcripts and failed to provide "exculpatory evidence pertaining to the

Informant."  Even if not fully waived by entering his plea of guilty, these claims

are meritless.

Federal Rule of Criminal Procedure 6(e) limits the disclosure of

matters occurring before the grand jury.  Prior to trial, a court may release grand

jury material to a defendant "who shows that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury."  Fed. R. Cr. P.

6(e)(3)(E)(ii).  In order to justify disclosure, a defendant must make a showing of

"particularized need."  *See Douglas Oil Co. v. Petrol Stops*, 441 U.S. 211, 222-23

(1979).  Cacho did not move for a disclosure of grand jury transcripts prior to trial,

and failed to demonstrate any particularized need in his § 2255 motion.

---

[8] As to his *Miranda* rights, Cacho first denied that he received any Miranda warnings, but later admitted that he had received warnings but did not read them.  In fact, the Spanish-language *Miranda* waiver form contains Cacho's signature.  His testimony in this regard was not credible.

Cacho fails to provide any details regarding the alleged exculpatory information regarding the informant. His conclusory allegation is insufficient to grant relief. In any event, the United States has proffered that no informant was used in this case, and there was no exculpatory material requiring disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

## IV. CONCLUSION

Cacho's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is DENIED. The Clerk of Court is directed to enter judgment and terminate this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 19, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cacho v. United States*; Civil No. 07-00404 JMS/LEK; Cr. No. 05-00164-02 JMS;
Order Denying Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence